RILEY vs. HICKS.

1. A misnomer in a submission consisting only in using a wrong middle initial letter in writing the name of one of the referees, as a B for a V, will not vitiate the award; especially where it appears by parol evidence that the referee selected was the person who acted as such and signed the award.

2. A submission which describes the subject-matter of controversy as "the purchase and settlement of a horse," is not too vague or uncertain, its ambiguity being explainable by parol evidence.

3. The award, construed in the light of the parol evidence offered, follows the submission.

4. When an award is pleaded in bar of an action on the original demand, it is no ground for ruling it out as evidence that the referees denied one of the parties a proper hearing, the inquiry whether this was so or not being one for determination by the jury.

5. An offer by the warrantor to return the purchase money of property which he has sold with warranty of soundness, and a refusal to accept the offer, will not release the warrantor or discharge the contract of warranty.

6. Whether an account in favor of a partnership, after becoming the property of one of the partners by division of assets, can be collected by him at law, without producing a written assignment, or whether the copartner should be made a co-plaintiff by amendment, is no further decided than by referring to *Turk vs. Cook*, 63 *Ga.* 681.

May 25, 1888.

Misnomer. Arbitration and award. Ambiguities. Evidence. Warranty. Partnership. Before Judge HAR-RIS. City court of Macon. June term, 1887.

J. R. Hicks sued George S. Riley on an account for the price of an iron grey horse of the value of $175, the bill of particulars annexed to the declaration being headed " George S. Riley, Dr. to J. R .Hicks, transferee of Butner & Hicks." The defendant pleaded the general issue ; also that, prior to the purchase of the horse, defendant had purchased from Butner & Hicks a grey mare for $160, which sum was paid, Butner & Hicks having warranted the mare to be sound, when in fact she was not, but was diseased, from which she sickened and died, and was so totally valueless that when the disease became patent Butner & Hicks thus became indebted to defendant $160. Defendant returned the mare to them and took the horse in exchange at the price of $175 ; and he is indebted only $15, though they demanded $40 for the difference in price between horse and mare. Defendant not agreeing to this, the matter was, by consent, submitted to two arbitrators, who, after hearing evidence, awarded Butner & Hicks the $40 claimed by them (as appears by a copy of the submission and award annexed), and thereupon defendant tendered them the amount so awarded and now tenders it, and

pleads it in bar. He also pleaded that, a few months before buying the horse, he purchased from Butner & Hicks a grey mare for $160, which he paid them at the time, they warranting the mare to be sound, when in fact she had the seeds of disease in her feet which rendered her shortly thereafter totally valueless, and thereupon the vendors became indebted to defendant $160, which he pleads as a set-off, and tenders the difference. The submission and award attached to the pleas will be referred to hereafter.

On the trial, J. R. Hicks swore that defendant bought the horse of Butner & Hicks for $175, and still owed that sum; that at the dissolution of the firm named, the account for this horse fell to witness's share, and he was the owner of it; that before this sale, the firm had sold defendant a mare which was sound at the time of her sale; that defendant brought the mare back, claiming that she was unsound, and offered to pay $15 difference between her and the horse, but Hicks asked $40; that defendant refused to make this trade, but in about two or three weeks bought the horse outright for $175 and left the mare with the firm to be disposed of by them for him; and that she was not sold by them, but taken away by defendant of his own accord and sold to another person. Hicks also testified that he did not agree to the alleged arbitration, etc.

At the conclusion of his testimony, the plaintiff closed, and defendant moved for a nonsuit, which was refused. Other testimony was afterwards offered by plaintiff in corroboration of his own.

The testimony for the defendant was directly conflicting with that for the plaintiff as to the soundness of the mare when she was sold, and as to the way in which the horse was purchased, defendant claiming that Butner & Hicks agreed to take back the mare be-

cause of her unsoundness, and that he was to pay the difference in price, either $15 or $40, the mare being sold to him at $160 and they claiming $175 for the horse.   He told them he would take the horse and they could take the mare, and when they sold her he would pay the difference.   They kept the mare nine or ten days and could not sell her.   They then told defendant to let his brother take the mare and take off her shoes; and whatever trade he made as ·to the mare would be all right.   She got out about ten miles from town and died.

There was much evidence for defendant on the subject of the arbitration and on other matters not necessary to report here.   The jury found for the plaintiff the full amount sued for.   The defendant moved for a new trial on the following grounds:

(1)–(3) The verdict was contrary to law and evidence.

(4) Error in rejecting the following written evidence:

"MACON, GA., January 19, 1885.

"Whereas a misunderstanding has arisen between the undersigned in reference to the purchase and settlement of a horse, they have agreed to make their statements before the following gentlemen by them for arbitrators, J. W. Goodwyn and R. B. Nottingham; and do hereby waive all right to appeal, and obligate and agree that this arbitration shall be final.          GEORGE S. RILEY, BUTNER & HICKS.

"MACON, GA., January 19, 1885.

"We, the arbitrators, agree that Mr. Butner guaranteed the grey mare; and that Mr. Riley is due Messrs. Butner & Hicks forty dollars, being the difference asked between the mare and the grey horse.          J. W. GOODWYN, R. V. NOTTINGHAM."

The paper was identified by Goodwyn as the submission and award in regard to the horse here sued for.

The motion was amended by adding the following grounds:

(1) Because the court overruled the motion for non-suit.

(2) Because the court refused to charge as follows: " If the jury believe from the evidence that the horse, the subject-matter of this suit, belonged to Butner & Hicks, a partnership, and was by said partners sold to defendant, then, though the partners, Butner & Hicks, made a verbal division of their accounts and this one fell to plaintiff, Hicks, plaintiff would not be entitled to recover."

(3) Because the court charged as follows: " If you believe from the evidence that the mare was warranted to be sound, and that afterwards Riley complained of her unsoundnesss, and Hicks offered to give him back the purchase price of the mare and he refused, then this relieved Hicks and Butner from their warranty."

(4) Because the court charged as follows: " I also charge you that the testimony of Dr. Goodwyn is ruled out."—Objection: This evidence was admitted subject to future ruling, and was argued to the jury.  Dr. Goodwyn was ill, and it was agreed that he should testify so as to leave the court, and objection to his testimony could be made; and objection was made to that portion of his testimony as to what was in controversy before the arbitrators; and this was the ruling requested and ruled out.  Prior to the charge, there had been no ruling excluding the testimony of Dr. Goodwyn, which is claimed to be competent and relevant.

(5) Because the court, in his charge, withdrew from the consideration of the jury the following testimony of Goodwyn: " Butner and Hicks testified; and the whole subject of controversy before the arbitrators was, that Riley had bought a horse from them that had proved to be unsound, and that he had returned the horse (or mare, I think it was,)—he had probably returned it

twice, and he had finally obtained a horse from them; and by this arbitration they wanted the difference between the two horses settled. They had sold him a mare that was at the time a little lame, but they guaranteed her soundness, and to make good their guarantee they took the mare back and gave him an iron grey horse; and we were to arbitrate the difference in value. These two gentlemen testified, and Riley testified before us. Butner and Hicks at that time were claiming only the difference between the two horses. They claimed that it was a trade between the two horses; and were not claiming at that time that the last horse should be paid in full."

A new trial was refused, and the defendant excepted.

The above statement is to be read in connection with the decision.

HARDEMAN & DAVIS, for plaintiff in error.

R. W. PATTERSON, contra.

BLECKLEY, Chief Justice.

There was error in excluding the submission and award, and the parol evidence showing the circumstances of the arbitration.

1. The point that the award was signed by R. V. Nottingham, when the submission described him as " R. B. Nottingham," is met by some evidence we find in the record, showing that the person selected as the referee was Robert Nottingham, the druggist, and that the Nottingham who was the druggist was the referee who acted, and whose signature was to the award. This was a misnomer in the submission, and a very slight one too, only a B for a V.

2. The objection that the submission was too vague
and uncertain is not well-founded; because from read-
ing the submission, we well understand that it related to
a controversy which had arisen between the parties with
reference to a horse. The submission does not set out
what the controversy was, but the subject-matter was
" the purchase and settlement of a horse." This action
was brought for the price of a horse. If the submission
be ambiguous—and it is somewhat so,—it is explainable
by parol evidence, under sections 2757 and 3801 of the
code. There is at least enough in the instrument to
build upon with parol evidence; and the evidence offered
and ruled out would have made it sufficiently certain, if
it was wanting in certainty before.

3. The objection that the award does not follow the
submission or relate to this controversy but relates to a
difference between prices, and to the question of guar-
anty, is not good; because the award settles that one of
the parties to the arbitration is to pay to the other $40,
" being the difference asked between the mare and the
grey horse." The evidence shows clearly what is meant
by this reference to the mare and the grey horse. Riley
had purchased a mare from Butner and Hicks at the
price of $160. He had paid for her. The award finds
that Butner, who represented this partnership in that
transaction, guaranteed the mare. She proved unsound
(it might have been in controversy whether she was un-
sound at the time of the purchase, but she was certainly
so afterwards,) and died. Riley also, at a later date,
purchased of the same parties a horse, the one the price
of which is now sued for, at $175. In this latter pur-
chase, some negotiations took place with reference to
the difference to be paid between the two animals, the
sellers (seeming to concede their liability upon the war-
ranty) asking $40, and the buyer being willing to give

$15. The award deals with that subject, and decides that Riley is due Butner & Hicks $40, "being the difference asked between the mare and the grey horse."

4. The objection that the award was made without a proper hearing from Mr. Hicks, was matter for investigation and trial in connection with the defence of arbitration set up in the case. The arbitration and its results cannot be excluded because one of the parties contends that the proceedings on the submission were not fairly conducted. The question of fairness is certainly not one for the court to determine, so as to exclude the whole business from the consideration of the jury; it is a part of the matter to be tried, and its privilege is only to go to the jury with the award, not to prevent the award from going before that tribunal.

5. The court also erred in charging the jury that if Hicks offered to return the purchase money of the mare and Riley refused, this released Butner & Hicks from their warranty. How would it release them from their warranty? Does the offer to pay damages sustained by a breach of warranty release the warrantor from his liability upon the warranty? Does an offer to rescind the contract (supposing we treat it as an offer of rescission and a refusal to rescind) release the warrantor from his contract of warranty? The answer of the law to these questions is the same as that made by common sense.

6. The question of whether the assignment of this account was sufficiently proved on the trial we leave open There will be opportunity, as a new trial is ordered, to amend the declaration, making both of the partners parties plaintiff, if it should be found necessary. The action is brought by Hicks, one of the partners, for the price of a horse sold by Butner & Hicks to Riley. The bill of particulars annexed to

the declaration debits Riley to Hicks, "transferee of Butner & Hicks." It is very probable, if the declaration is left to stand as it is, that under the case of *Turk vs. Cook*, 63 *Ga.* 681, it would be necessary for Hicks to prove a written assignment of the account in order to recover. But we see no obstacle to amending the declaration by supplying Butner as one of the parties plaintiff suing for the use of Hicks.

The judgment refusing a new trial is reversed.