## Montgomery County v. Taylor, et al.

(Decided March 2, 1911.)

### Appeal from Menifee Circuit Court.

1. County—Contract Of—Parol Evidence.—Montgomery county issued bonds to aid in the building of a railroad. Subsequently, Menifee county was created. A portion of Montgomery county was embraced in Menifee county. Committees were appointed by the county courts of Montgomery and Menifee counties to adjust the indebtedness. The Menifee Committee made a verbal report to the county court of that county. Montgomery county brought this action against the members of the county court of Menifee to enforce the compromise agreement; as they came into office, other members of the county and fiscal courts of Menifee county, were made parties defendant. Held, that certain orders entered by the Menifee County Court had the effect of ratifying the agreement made by the committee with the Montgomery County Com-

mittee; but that parol evidence is inadmissible to show what the agreement was. The fiscal court of Menifee county, however, has the power to hear testimony, determine what the agreement was and spread it upon the records.

2. Bonded Indebtedness—Refunding—Liability of Territory Taken From County Issuing Bonds.—Under the act creating Menifee county, that part taken from Montgomery county, was made liable for its part of the bonded indebtedness. The control and management of the indebtedness were left to Montgomery county. The refunding of the debt did not have the effect of releasing the territory so taken from Montgomery county from liability for its part of the indebtedness.

3. Action—Prayer for all Appropriate Relief.—In an action to enforce the compromise agreement, it appearing that the territory in question is still liable for its pro rata part of the original indebtedness, the members of the fiscal court of Menifee under a prayer for all appropriate relief will be given the option of hearing proof and determining what the compromise agreement was, and spreading it upon the records, and then being required to take such steps as may be necessary to carry out the agreement, or of having the court appoint a commissioner to hear proof and report what is Menifee county's proportionate part of the indebtedness, and making such parties defendant and making such orders as may be necessary to require the levying of a tax sufficient to provide the payment thereof.

C. C. TURNER, ROBERT H. WINN and A. A. HAZELRIGG for appellant.

J. F. OSBORNE, T. L. CAUDELL and B. F. DAY & SON for appellees.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

In 1853 Montgomery county, as then constituted, issued bonds for $200,000, due in thirty years, to aid in the construction of the Lexington & Big Sandy Railroad. In 1869 the Legislature created Menifee county. (See Acts 1896, vol. 1, p. 65.) Subsection 7 of that act is as follows:

"That nothing in this act shall be construed to release the citizens and property now subject to taxation within the boundary of the first section of this act from being held liable for the bonds and interest thereon which were issued to the Lexington & Big Sandy Railroad Company as though this act had never been passed. The assessor of tax of Menifee county shall annually assess and take in all taxable property within the boun-

daries of their counties as existing before the passage of this act for the purpose of being taxed to contribute as heretofore to the payment of said bonds and interest; and the county court of Menifee county shall levy annually on the portions of citizens and property in the parts of Menifee county which are taken from the counties of Bath and Montgomery the same rates of taxation as are levied and collected for the purpose of paying such bonds and interest thereon which are levied and collected in the counties of Bath and Montgomery for that purpose; and the sheriff of Menifee county shall collect the said railroad tax, and so on from year to year, until the bonds and interest shall have been fully paid; and when so paid or otherwise discharged, the power to assess, levy, and collect shall cease; and said sheriff shall pay over to the county judges of the counties of Bath and Montgomery the respective proportions of said counties of said tax at the time he is by law required to pay other taxes, and they shall account and be responsible therefor under existing laws.''

In 1883 Montgomery county, pursuant to authority contained in an act of the General Assembly, approved April 8th, 1880, refunded $120,000 of the bonds. In 1893 it refunded the balance of the bonds, then amounting to $73,000. This action was taken pursuant to section 1852 of the Kentucky Statutes (1894 edition).

About the year 1890 Montgomery county instituted an action against the Menifee county court to compel that court to levy upon the taxable property of that portion of Menifee county that was formerly a part of Montgomery county a tax equal to the tax levied by Montgomery county for the purpose of paying the railroad debt represented by the bonds referred to. The lower court sustained a general and special demurrer to the petition. On appeal to this court (see Montgomery County v. Menifee County Court, 93 Ky., 33) it was held that the special demurrer was properly sustained, because the action should have been against the officers of the county court instead of the court, itself. It was also held that the general demurrer to the petition was improperly sustained. In discussing the matter this court said:

''So, in this case, the refunding of the indebtedness and the issual of the new bonds in payment of it, did not create a new debt, but the evidence of it was merely changed, which change Montgomery county had the right

to make without consulting Menifee county, or that part of the territory embraced therein that once belonged to Montgomery county; for, by the act creating Menifee county, that part of the territory that was taken from Montgomery county was to remain a part of that county for the purpose of being bound for its pro rata of the Montgomery debt and for its payment; but the management and control of the debt, and the provisions for its payment, belonged exclusively to the appellant. And the only power that the appellee possessed, under the act creating it, was that of an agency to collect the pro rata of the indebtedness that said territory should pay, as ascertained by the appellant. It seems to us that, as far as the general demurrer is concerned, the petition presents a cause of action; but the court was right in sustaining the special demurrer.''

Conceiving that that part of Menifee county which was formerly a part of Montgomery county, and the citizens thereof, were liable for their pro rata share of the railroad debt under the above opinion of this court, the fiscal courts of Montgomery and Menifee counties set on foot certain proceedings having in view a compromise of the matter in controversy. To that end the county court of Menifee county, on January 3rd, 1893, entered the following order:

"It is ordered that W. R. Tabor, E. S. Congleton and Alfred Combs be and they are hereby appointed this court's committee to confer with Montgomery county, Kentucky, as regards the levy of taxes in that portion of Menifee county, Kentucky, that formerly belonged to Montgomery county, Kentucky, which was stricken off to Menifee county in the formation of the same.

"Said levy was made by Montgomery county, Kentucky, for the purpose of paying the interest on the bonds issued by said county to the Lexington & Big Sandy Railroad and the Lexington & Elizabethtown Company, for the years 1885, 1886, 1887, 1888, 1889, 1890, 1891, 1892.''

On February 21st, 1893, the Montgomery county court entered an order appointing Louis Apperson, H. Jones and I. N. Horton a committee to confer with the committee appointed by the Menifee county court as to the tax owing to Montgomery county from Menifee county on account of the railroad debt.

On April 7th, 1893, the Montgomery county court entered an order filing the written agreement reported by

the Montgomery county commissioners and approving the same.

The commissioners appointed by the Menifee county court made a verbal report.

On May 13th, 1893, the Menifee county court entered the following order:

"Ordered that Alfred Combs be and he is hereby appointed county commissioner and receiver to receive and receipt for any and all money from the collector who may hereafter be appointed to collect all moneys due Montgomery county on account of railroad tax due said county on that portion of Menifee county that formerly belonged to said Montgomery county before the formation of said Menifee county for the year 1893 to pay interest railroad bonds."

On the same date the following order was also entered by the Menifee county court:

"Ordered that Alfred Combs be and he is hereby authorized to pay any and all moneys that may hereafter come to his hands as commissioner in and for Menifee county, Kentucky, for the year 1893, on account of railroad taxes due Montgomery county on that portion of said Menifee county that formerly belonged to said Montgomery county."

On August 14th, 1893, the county court of Menifee county entered the following order:

"Whereas, a former order was made appointing W. R. Tabor, E. S. Congleton and Alfred Combs commissioners in and for Menifee county, Kentucky, to confer with Montgomery county, Kentucky, touching a complete settlement of the railroad tax in that portion of Menifee county, Kentucky, as formerly belonged to Montgomery which embraces the western portion of said county being a portion of precinct No. 4 of Menifee county, Kentucky. (Here follows a description of that part of Menifee county taken from Montgomery county.)

"And said committee having come to terms with a similar committee from Montgomery county and agreeing to pay said Montgomery county a certain sum of money which is to be collected from above boundary of 4th precinct or the persons who live therein to be paid yearly and J. C. Lyons present sheriff of Menifee county having heretofore appeared in open court and waived his constitutional and statutory right as sheriff to collect said money or taxes, all of which is shown by the

former orders of this court, and said commissioners—Alfred Combs, W. R. Tabor and E. S. Congleton, recommending the appointment of I. T. Hedger as collector of said taxes:

"It is, therefore, ordered that I. T. Hedger be and he is hereby appointed collector in and for Menifee county, Kentucky.

"He is, therefore, directed to collect from each citizen and housekeeper entitled by law to pay taxes the sum of 25 cents on each $100 worth of taxable property in said boundary, as shown by the assessor's books for said year."

On December 15th, 1893, Alfred Combs, receiver, E. I. and B. S. R. tax, paid the Mt. Sterling National Bank, receiver for Montgomery county, the sum of $125. The sum so paid, it is claimed, was the amount of interest due on the compromise agreement. According to the testimony of Combs, he made, shortly after the verbal report was made, a written report setting forth the terms of the agreement with the commissioners appointed by Montgomery county, and delivered the same to the county judge. This report, however, is not on file. About four years later, Alfred Combs and E. S. Congleton, two of the commissioners appointed by Menifee county, made a written report setting forth the precise terms of the agreement made with the commissioners of Montgomery county. A motion was made to have this report filed, but the county court of Menifee county declined to permit it to be filed. This written report is substantially the same as the report made by the Montgomery county commissioners to the Montgomery county court, and approved by that court. When this report was made, however, Combs and Congleton had moved away from Menifee county. Other commissioners to confer with Montgomery county with reference to a settlement of the railroad tax had in the meantime been appointed.

In the year 1898 Montgomery county brought this action against W. C. Taylor, then county judge of Menifee county, and John Armitage and others, who were justices of the peace, to enforce the compromise agreement made between Menifee county and Montgomery county, and asked for a mandamus compelling them, each year, to levy a sufficient tax to pay the interest on the sum of $2,500, which, it charged, was the amount of the compro-

mise agreed upon.  From time to time amendments were filed, making the various members of the Menifee county and fiscal court, as they came into office, parties defendant.  The petition and the various amendments thereto contained prayers for all appropriate relief.  The numerous defendants took the ground that the Menifee commissioners never made any written report to the Menifee county court, setting forth the terms of the agreement made with the Montgomery county commissioners; nor did the Menifee county court enter any order setting forth the agreement; nor did that court in any way approve the action of its commissioners.

The trial court denied the relief prayed for by Montgomery county, and entered an order dismissing the action.  From that judgment the county of Montgomery appeals.

From the orders of the Menifee county court hereinbefore set out, it appears that that court appointed three commissioners to confer with Montgomery county in regard to the levy of taxes in that portion of Menifee county that formerly belonged to Montgomery county.  These commissioners made a verbal report to the county court of Menifee county.  That court appointed Alfred Combs county commissioner and receiver to receive and receipt for any and all moneys from the collector who might thereafter be appointed to collect all money due Montgomery county on account of the railroad tax due said county from that portion of Menifee county that formerly belonged to Montgomery county.  On the same day an order was entered directing Combs to pay any and all moneys that might thereafter come to his hands as commissioner to Montgomery county.  Three months later the Menifee county court entered an order reciting the former appointment of the commissioners. "touching a complete settlement of the railroad tax in that portion of Menifee county that formerly belonged to Montgomery county."  The order then accurately describes the territory which was taken from Montgomery county in the formation of Menifee county.  It further recites: "And said committee having come to terms with a similar committee from Montgomery county and agreeing to pay said Montgomery county a certain sum of money which is to be collected from above boundary;" and then proceeds to levy a tax on that territory of twenty-five cents on each one hundred dollars, and appoints a col-

lector to collect the same. While the order of August 14th, 1893, does not in terms approve the action of the Menifee commissioners, the action of the Menifee county court in referring to the original appointment of the commissioners, in setting forth the fact that these commissioners had come to terms with the Montgomery county commissioners, in setting out the territory in Menifee county which had been taken from Montgomery county, and in levying a tax thereon and appointing a collector to collect the same, can not be construed in any other light than as an act of ratification. In other words, whatever agreement the Menifee commissioners made with the Montgomery commissioners was approved. However, the county or fiscal court can only contract by its record. In an action to enforce an agreement made with the county, through its county or fiscal court, parol evidence can not be introduced to show what the agreement was. That being true, we can not in this action determine what the real agreement was; but the Menifee fiscal court has the power to hear evidence and determine what the real agreement was, and to spread that agreement upon its record.

As that part of Menifee county taken from Montgomery county still remained a portion of Montgomery county so far as the payment of the railroad bonded debt is concerned, and as Montgomery county had the right to manage and control the debt, not only for itself as then constituted, but for all the territory that composed Montgomery county when the original bonds were issued, it follows that the refunding of the indebtedness, which did not create a new debt, but merely changed the evidence of it, did not have the effect of releasing that part of Menifee county in controversy from its pro rata share of the indebtedness. Having the right to act for Menifee county, the action of the Montgomery county court was just as binding on that county as it was on Montgomery county. That being true, the original indebtedness, whether represented by the original bonds or refunding bonds, is a just debt against Menifee county to the extent of the territory involved and to the extent of its proportionate part of the indebtedness. It follows, then, that the Menifee fiscal court will have to take steps to levy and collect a tax upon the citizens and taxable property of the territory involved, for the purpose of discharging this obligation. Being liable, it will not be permitted to repudiate its part of the indebtedness.

Upon the return of this case, the trial court will proceed in one of two ways, at the election of the fiscal court of Menifee county: It will. permit the members of that court within a reasonable time to meet and hear evidence as to what were the terms of the agreement which we have held was subsequently ratified, then spread that agreement upon its record, and it will then require the members of the fiscal court to levy a tax sufficient to carry out the agreement, and provide for its collection; or, upon its failure to do this the trial court will appoint a commissioner to hear evidence and report what is Menifee county's pro rata of the indebtedness heretofore paid and to be paid, and will make such parties defendant and will enter such orders as may be necessary to require the members of the fiscal court to levy a tax sufficient to discharge the amount of the indebtedness found to be due, and to see that such taxes are collected. As said before, the members of the fiscal court of Menifee county may elect which method of procedure shall be adopted. The facts all being before us, and there being in the petition and amended petitions prayers for appropriate relief, we conclude that one method or the other must be adopted. The territory is liable for its share of the debt, and the court should see that it is paid.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

JUDGE O'REAR not sitting.