## O'Kelly, et al. v. Lockwood, et al.

(Decided June 20, 1913).

### Appeal from Boyd Circuit Court.

1.  Public Roads—Contract to Keep in Repair—Order of Fiscal Court Directing County Attorney as Commissioner to Make Contract to Maintain Roads—Void Contract—Attempted Ratification of.—The fiscal court has no power to delegate to an agent the authority to do anything which involves the exercise of a discretion which by law is confided to it, and where a fiscal court by an order directed a commissioner to make a contract for maintaining public roads, which order contemplated the exercise of his own judgment and discretion, it was void. Nor could the fiscal court delegate authority to the commissioner to approve the bond of the contractor, for the acceptance of the bond necessarily involves a discretion. The only way in which the fiscal court can act is through its orders duly recorded in the manner provided by law

2.  Fiscal Courts—Power to Validate and Ratify Void Contract.—The contract attempted to be made by a special commissioner with a contractor for the maintenance of the public roads of the county was one which was within the power of the fiscal court to make, and the fact that its agent did not take the required steps to make it a binding obligation, does not deprive the governing body of the county of the power to thereafter validate and ratify it so as to make it binding from the beginning, and the attempt upon the part of the fiscal court to carry out the contract attempted to be made by its commissioner will be treated as a ratification of his acts, and make the contract relate back to the original transaction.

DINKLE & PRITCHARD and J. J. MONTAGUE for appellants.

LABAN T. EVERETT, JOHN F. COLDIRON for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

After due advertisement, the fiscal court of Boyd County at its April term, 1912, opened bids for the working and keeping in repair of the roads for two years, under the provisions of section 4315 of the Kentucky

Statutes; the appellant, O'Kelly, being the lowest bidder, was awarded the contract.

On the second day of April, 1912, the following order was entered:

"Bids opened for the maintenance of roads of Boyd County and contract awarded to John O'Kelly, his bid being the lowest, $21.85 per mile."

At the same term, and on the fourth day of April, the following order was entered.

"Ordered that F. C. Malin, County Attorney, be and he is hereby appointed a commissioner to make contract and take bond of John O'Kelly in the matter of maintaining roads of Boyd County."

Thereafter, and on the eighth day of April, Malin as commissioner attempted to enter into a contract with appellant for and on behalf of the Boyd County Fiscal Court under his supposed authority, and at the same time underook to accept from appellant, O'Kelly, a bond for the faithful performance of his contract as provided by section 4315. These papers were subsequently filed with the county court clerk, but neither of them were ever reported to the fiscal court of Boyd County, or approved or ratified by any order of that court. O'Kelly assuming that he had a valid contract with the county proceeded at once to make sub-contracts, to buy machinery and to have the work done.

In August, 1912, appellees, residents and taxpayers of Boyd County, conceiving the paper so signed by O'Kelly and Malin to be void and of no binding effect upon the county, instituted this action against O'Kelly, the county judge, members of the fiscal court, and other county officers, seeking to enjoin them from proceeding under the contract, or paying to O'Kelly or any of his sub-contractors any money thereunder.

Pending the action, and on the second day of September, 1912, the Boyd County Fiscal Court entered an order reciting the fact that it had in open court on the second day of April, 1912, opened the various bids and considered the same, and found O'Kelly to be the lowest and best bidder, and that O'Kelly's bid was a bid of $21.85 per mile per year for each of the years of 1912 and 1913, and that same had been accepted and approved by the court, and that the same term it had appointed Malin its commissioner to draft and enter into a written contract with O'Kelly on behalf of the county in accordance with the specifications already on file, and that it

had directed him (Malin) to embody in said contract that
O'Kelly was to receive $21.85 per mile for each of the
said years, but that Malin by mistake so drew said con-
tract that O'Kelly was to maintain and keep in repair
the said roads for the years 1912 and 1913 for the sum of
$21.85 per mile; and for the purpose of correcting said
contract and supplying the orders of the court in regard
thereto, and correcting them, it appointed another
special commissioner for and on behalf of the county and
the fiscal court to correct and amend said contract so as
that it might conform to the specifications and with the
terms of O'Kelly's bid.

On the 6th day of September, the said fiscal court
entered the following order.

"This day came C. L. Williams, Commissioner, act-
ing in behalf of Boyd County to make corrected contract
with John O'Kelly for maintenance and repair of the
graded dirt roads in Boyd County, Kentucky, and pro-
duce said corrected contract, duly signed and executed
by C. L. Williams, Commissioner aforesaid, and said
John O'Kelly, which contract was read in open court and
upon motion duly seconded and carried, it is ordered that
said corrected contract be and the same is hereby ac-
cepted and approved and ordered filed, and it is further
ordered that the bond offered by said John O'Kelly, duly
executed by himself as principal and the Maryland Casu-
alty Co. as surety, for the faithful performance of said
contract this day executed, be and the same is hereby
accepted and approved and ordered filed."

Upon the filing of the original petition the clerk
issued a temporary restraining order which upon final
hearing was made perpetual by the circuit court, and
from that judgment this appeal is prosecuted.

The record presents two questions:

(1) Did the original writing signed by Malin, the
commissioner acting for the county, and his approval of
the bond executed by O'Kelly, make a binding contract
between O'Kelly and the county?

(2) Did the subsequent action of the fiscal court
have the effect to cure any defects in the original con-
tract or in the manner of its execution, and thereby ratify
the acts of its agent attempted to be performed for it,

(1) The fiscal court has no power to delegate to an
agent the authority to do anything which involves the
exercise of a discretion which by law is confided to it, and
if the orders of the court directing the commissioner to

enter into the contract with O'Kelly involved any such discretion upon the part of the commissioner, or confided to him the doing of anything which necessitated the exercise of his judgment, then they are void. The order directing Malin as commissioner to make the contract, and take the bond of O'Kelly was indefinite and vague as to the powers conferred upon the commissioner; it neither referred to the bid of O'Kelly, nor to the plans and specifications under which that bid was made; it did not direct the terms upon which the contract was to be made, nor did it indicate the nature or amount of the bond which he was to take and accept. Under the terms of that order the action of the commissioner necessarily contemplated the exercise of his own judgment and discretion about these matters, and, was, therefore, void. Floyd County v. Oswego Bridge Co., 143 Ky., 693; Kazee v. Commonwealth, 139 Ky., 66; Milliken v. Gillem, 135 Ky., 280.

But even if this were not so, under the express terms of section 4315 of the Kentucky Statutes, it is the duty of the fiscal court itself to approve the bond of the contractor, and it has no authority to delegate that right to another. The only way in which the fiscal court of a county can act is through its orders duly recorded in the manner required by law; and even if the orders of the court had been drawn so as to leave no discretion in the commissioner as to the character of the contract to be entered into with O'Kelly, still the fiscal court could not have delegated to him the authority to approve the bond. The acceptance of the bond necessarily involved the exercise of a discretion; but if it did not that power rested under the statute solely with the fiscal court, and its approval could be made in no event by any other person or body, or in any manner except by an order duly entered on, its record.

(2)   But it is clear from the record that the fiscal court and O'Kelly were in the first place each acting in good faith, and that they each thought they had entered into a binding obligation; and the question remains, under these conditions had the fiscal court the power by subsequent orders to correct its oversights and errors previously made in its effort to enter into this contract, so as to ratify its original action and that of its commissioner, and make the contract relate back to the original transaction and be binding,

The orders of September, 1912, of the fiscal court evidence an unmistakable desire upon its part to take such

steps as would make binding the original attempted contract with O'Kelly. The original attempt was futile; the requirements of the law were not followed, and it was manifestly the purpose of the fiscal court to take such steps as would make binding that which it had previously attempted to do. Whether public or quasi-public corporations may subsequently ratify void efforts of their agents made in good faith under their orders to enter into contracts is not an open question. In the case of Montgomery County v. Taylor, 142 Ky., 547, the Menifee County Fiscal Court had previously appointed its commissioners to treat with the Montgomery County Fiscal Court as to the settlement of a tax claim which Montgomery County had against Menifee County. The commissioners so appointed by Menifee County met a similar body from Montgomery County and entered into a written settlement of the controversy, and made a written report to the fiscal court of Menifee County; but that report was never in terms ratified or approved by the Menifee Fiscal Court. But subsequently the Menifee Fiscal Court did enter such orders and take such steps as to show an intention upon its part to carry out the compromise so made by its commissioners, and this court in treating the subsequent orders and acts as a ratification said:

"While the order of August 14, 1893, does not in terms approve the action of the Menifee commissioners, the action of the Menifee County Court in referring to the original appointment of the commissioners in setting forth the fact that these commissioners had come to terms with the Montgomery County commissioners, in setting out the territory in Menifee County, and in levying a tax thereon and appointing a collector to collect the same, cannot be construed in any other light than as an act of ratification."

In that case the contract was held to have been ratified by subsequent orders and conduct although there was no ratification in terms, whereas in this case there is *express* subsequent ratification. The contract attempted to be made in the beginning was one which was within the power of the fiscal court to make, and the fact that its agent did not take the required steps to make it a binding obligation, does not deprive the governing body of the county of the power to thereafter validate and ratify that contract so as to make it binding from

the beginning. (Page on Contracts, Vol. 2, Sections 1063 and 1064).

For the reason indicated the judgment is reversed, with directions to enter a judgment in conformity herewith.