## Carter, et al. v. Krueger & Son, et al.

(Decided May 4, 1917.)

### Appeal from Lincoln Circuit Court.

1. Arbitration and Award—Submission—Sufficiency.—The submission in an arbitration agreement of "difference in the settlement of the accounts between the county fiscal court and F. Krueger & Son arising over the building of a new court house for said county" is sufficiently definite to support an award.

2. Counties—Orders of Fiscal Court—Validity.—An order of the fiscal court in the following words: "Moved and seconded that James P. Bailey be and he is hereby authorized to see P. M. McRoberts and secure him as one of the arbitrators in a settlement between Lincoln county and F. Krueger & Son," is not invalid on the ground that a motion made and seconded is not an order of the fiscal court, since the words "moved and seconded that James P. Bailey be" are followed by the further clause "and he is hereby author-

ized," etc.; and the effect is the same as if the order had provided
that James P. Bailey is hereby authorized to see P. M. McRoberts,
etc.

3.  Arbitration and Award—Counties—Power of Fiscal Court.—A
county acting through its fiscal court may submit to arbitration,
with the same liability to perform the award as would rest upon a
natural person, a claim growing out of a contract made by an
unauthorized agent, provided such contract was not ultra vires, but
was one which the fiscal court could have made in the first in-
stance.

4.  Counties—Fiscal Administration—Limit of Taxation.—In deter-
mining whether a particular indebtedness exceeds the revenue
and income for the year in which it was incurred, it is not the levy
actually made, but the levy authorized by the Constitution that
controls.  Hence, if it appear that the county was authorized to
exceed the levy actually made, and the authorized excess, added
to the levy actually made, would be sufficient to discharge all
valid prior indebtedness, including the indebtedness in question,
it cannot be said that the indebtedness in question exceeds the
revenue and income provided for the year.

5.  Counties—Fiscal Administration—Limit of Taxation—Power to
Exceed.—Subject to section 158 of the Constitution, a county
may exceed the 50-cent levy fixed by section 157 of the Constitu-
tion, for the purpose of providing a sinking fund to meet bonds
voted by the people pursuant to the last named section.

6.  Counties—Debt Limit—Evidence.—In an action attacking a por-
tion of a particular debt, on the ground that it exceeded the
revenue and income of the county for the year 1909, in which it
was incurred, evidence examined and held to show that as the
county had levied a tax of 6½ cents to meet outstanding bonds
voted by the people, it had the authority, under the Constitution,
to increase the levy for general expenses to that extent, and had
this been done, the authorized excess, added to the levy actually
made, would have produced sufficient income to meet all alleged
outstanding indebtedness, including that portion of the debt in
question due for that year.

7.  Counties—Debt Limit—Evidence.—In an action attacking a por-
tion of a particular debt, on the ground that it exceeded the
revenue and income of the county for the year 1910, in which it
was incurred, evidence examined and held to show that as the
county had levied a tax of 3¾ cents to meet outstanding bonds
voted by the people, it had the authority, under the Constitution,
to increase the levy for general expenses to that extent, and had
this been done, the authorized excess, added to the levy actually
made, would have produced sufficient income to meet all alleged
outstanding indebtedness, including that portion of the debt in
question due for that year, with the exception of $158.79.

8.  Counties—Constitutional Provision—Construction—Debt Limit—
Liabilities—Current Expenses—When Included.—In order that cur-

rent expenses may be included in estimating the outstanding indebtedness of a county at the time the particular debt in question was created, it must appear either that such current expenses consisted of salaries and other fixed charges necessary to the maintenance of the county government, or arose out of binding obligations incurred prior to the creation of the debt in question.

9. Counties—Debt Limit—Liabilities—Current Expenses—When Included—Burden of Proof.—The burden of proof that current expenses are such as should be included in the estimate of outstanding liabilities of a county at the time the particular debt in question is created, is on the person attacking it, and where certain items of current expenses, not consisting of fixed charges, are undated and unexplained, and which, for aught the evidence shows, may have arisen out of obligations created subsequently to the debt in question, there is a failure of proof and such items should not be included in the estimate.

10. Counties—Debt Limit—Evidence.—In an action attacking a particular debt as being in excess of the constitutional limit, evidence examined and held to show that, after excluding certain items of current expense not proven to consist of fixed charges, or to have arisen out of binding obligations incurred prior to the debt in question, the debt in question did not exceed the revenue and income provided for the year in which it was incurred.

P. M. McROBERTS, W. S. BURCH, ROBERT HARDING and EMMETT PURYEAR for appellants.

ARTHUR B. BENSINGER and GEO. D. FLORENCE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The county of Lincoln voted a bond issue of $35,000.00 to build a court house and contracted with Kreuger & Son to do the work. When the building was completed, Kreuger & Son presented a claim for damages and extra work. Arbitrators were appointed, who made an award in favor of Kreuger & Son for the sum of $4,787.75.

G. W. Carter and others, as taxpayers, brought this suit to enjoin the fiscal court from paying the amount of the award. On final hearing the chancellor adjudged the award valid to the extent of $3,887.75, and invalid as to the remaining $900.00. Thereupon the payment of the $900.00 was enjoined and Kreuger & Son were given judgment for $3,887.75, with interest thereon at the rate of six per cent. per annum from July 27, 1910, until paid. Plaintiff appeals.

Article III of the contract between the county and Kreuger & Son provided, in substance, that no alterations should be made in the work shown or described by the drawings and specifications, except upon written order of the architects, and, when so made, the value of the work added or omitted should be computed by the architects, and the amount so ascertained should be added or deducted from the contract price. In case of dissent from such award by either party, the valuation of the work added or omitted should be referred to three disinterested arbitrators, one to be appointed by each of the parties and the third by the two thus chosen, the decision of any two of them to be final and binding, with the further provision that each of the parties should pay one-half of the expense of such reference.

On July 15, 1910, the fiscal court authorized the county judge to sign an arbitration agreement between the county and the contractor. At this meeting all the members of the fiscal court were present. The material part of the agreement, which was executed the same day, is as follows:

"This article of agreement made and entered into this the 15th day of July, 1910, by and between F. Kreuger & Son and the Fiscal Court of Lincoln. Witnesseth: That there is a difference in the settlement of the accounts between the county fiscal court, and F. Kreuger & Son arising over the building of a new court house for said county; now it is agreed between the parties hereto that the differences between them are to be settled by arbitration as is provided in article III of the original contract; that is, F. Kreuger & Son are to select a disinterested arbitrator and the county to select a disinterested arbitrator and the two to select a third; these arbitrators to meet at the court house in Stanford on July 22, 1910, at 10 o'clock A. M."

On the same day the following order appears on the records of the fiscal court:

"Moved and seconded that Jas. P. Bailey be and he is hereby authorized to see P. M. McRoberts and secure him as one of the arbitrators in a settlement between Lincoln county and F. Kreuger & Son."

Pursuant to this authority, James P. Bailey did secure the services of P. M. McRoberts as arbitrator, and J. W. Rider was chosen arbitrator by Kreuger & Son. At the suggestion of McRoberts, E. C. Looney was chosen

as the third arbitrator. Thereafter the arbitrators met pursuant to notice in Stanford, Lincoln county, and, having taken the oath prescribed by law, proceeded to hear the evidence of the parties and to decide the controversy. On July 27, 1910, a written award for the sum of $4,787.75 in favor of Kreuger & Son, signed by J. W. Rider and E. C. Looney, was made. The award is made up of several items, among which is an allowance for $900.00 "to damage on account of water in basement." Copies of the award were delivered to the county, F. Kreuger & Son and to each of the arbitrators. P. M. McRoberts, though present and participating in the arbitration proceedings, did not sign the award.

The submission and award are attacked on several grounds, which we shall consider in the following order:

1. The point is made that the submission was too vague and indefinite to support an award. The rule in such cases is that the law "neither exacts nor expects technical precision either in the submission or the award. It is enough if certainty to a common intent be observed." 5 C. J., section 48. Following this rule, it has been held that a submission of all injuries, or of all matters between the parties, or of all debts and demands, or of all matters in difference, will sustain an award made thereafter. 1 Bac. Abr. 211; Shackelford v. Purket, 2 A. K. Marsh. 435. Thus the submission of "our accounts and claims in relation to the Mill Rock Mills" was held sufficiently definite. Zook v. Spray, 38 Iowa 273. In the case of Riley v. Hicks, 81 Ga. 265, 7 S. E. 173, it was held that the submission of "the purchase and settlement of a horse" was not too vague or uncertain. It was likewise held in the case of King v. Jemison, 33 Ala. 499, that a submission of "the difficulties existing between the above-mentioned parties, in relation to the said Columbus bridge," was not void for uncertainty. Clearly, if the submission of all matters in dispute, or of all differences between the parties is sufficiently definite, there can be no doubt that a submission of "differences in the settlement of the accounts between the county fiscal court and F. Kreuger & Son, arising over the building of a new court house for said county," is not void for uncertainty.

2. The further contention is made that a motion made and seconded is not an order of the fiscal court, and the pretended order of July 15, 1910, conferred no

authority on the county judge to secure the services of
P. M. McRoberts as arbitrator, and the selection of Mc-
Roberts was, therefore, void. It will be observed that
the order in question is as follows: "Moved and sec-
'onded that Jas. P. Bailey be and he is hereby author-
ized to see P. M. McRoberts and secure him as one of
the arbitrators in a settlement between Lincoln county
and F. Kreuger & Son." There might be some merit in
plaintiff's contention if the order was as follows:
"Moved and seconded that Jas. P. Bailey be authorized
to see P. M. McRoberts," etc. As a matter of fact,
however, the order not only recites that it is moved and
seconded that Jas. P. Bailey be appointed for that pur-
pose, but contains the further words "and he is hereby
authorized to see P. M. McRoberts," etc. In other
words, it appears from the order not only that it was
moved and seconded that Jas. P. Bailey be authorized
to see P. M. McRoberts, etc., but that authority to that
end was actually conferred. The members of the fiscal
court being present, the effect of the order, under these
circumstances, is the same as if it had been provided
that Jas. P. Bailey is hereby authorized to see P. M. Mc-
Roberts, etc., and the mere insertion of the words
"moved and seconded" cannot destroy the legal effect
of the order. We, therefore, conclude that the order in
question is valid and conferred authority on the county
judge to select McRoberts as arbitrator on behalf of
the county.

3. Another objection urged to the submission and
award is that the extra items were furnished by the con-
tractor without authority and, that being true, the county
had no power either to ratify or submit his claim to
arbitration. While it is true that in the case of Worrell
Mfg. Co. v. City of Ashland, 159 Ky. 656, 167 S. W. 922,
52 L. R. A. (N. S.) 880, we announced the rule that use
by a municipality of supplies ordered by an unauthor-
ized agent imposes no liability upon it if the bill is
promptly rejected by the general council, which alone
has the power to bind the city, it was not intended to lay
down the doctrine that a municipality could not, under
any circumstances, ratify the act of an unauthorized
agent. Indeed, we have often recognized the rule that
where the contract made by the unauthorized agent is
not *ultra vires* so far as the municipality itself is con-
cerned, but is one which the municipality could have

made in the first instance, the municipality has the power to ratify it. O'Kelly v. Lockwood, 154 Ky. 544, 157 S. W. 1096; Montgomery County v. Taylor, 142 Ky. 547, 134 S. W. 894. Here Article III of the contract conferred on the architects the power to order extras and bind the county. Since the fiscal court cannot delegate its discretion to anyone else, it naturally follows that the above provision of the original contract is invalid, and as the extras were furnished pursuant to that provision, it likewise follows that they were ordered by an unauthorized agent. Unless the amount of the extras exceeded the income and revenue of the county, provided for the year in which they were furnished, without a requisite vote of the people, there can be no doubt that the fiscal court had the right, in the first instance, to order the extra items which form the basis of the contractor's claim. When these items, therefore, were furnished under a contract made by an unauthorized agent, the fiscal court was at liberty either to reject the claim or to ratify it. Had it rejected the claim, the county would not have been liable. Instead of doing this, it elected to, and did, submit the items to arbitration. In doing this it clearly recognized the liability of the county for such extra items as were actually furnished, and thereby ratified the contract. Under these circumstances, we perceive no good reason why the claim for extras could not be made the subject of arbitration. In the case of Remington, &c. v. Harrison County Court, 12 Bush 148, commissioners were appointed to look after the erection of a bridge which they contracted to have built for the sum of $14,480.00. On the completion of the bridge the contractor presented a claim for extras, which the commissioners declined to pay. Thereupon the matter was submitted to arbitration. It was held that a county court may submit to arbitration matters in controversy which might be the subject of a suit, and that the contractor could maintain an action against the county court to recover the amount of the award in his favor. Indeed, it is the generally accepted doctrine that a municipal corporation, unless disabled by positive law, may submit to arbitration all unsettled claims with the same liability to perform the award as would rest upon a natural person. Dillon on Municipal Corporations, vol. II, sec. 822; 2 R. C. L., section 7, page 358. In adhering to this doctrine, we do

not mean to hold that the fiscal court may impose upon the county, by arbitration, a liability which the fiscal court itself could not incur. If a claim grows out of an *ultra vires* contract, it cannot be made the subject of arbitration. If, however, it grows out of a contract which, though made by an unauthorized agent, was one which the fiscal court had the power to make in the first instance, such claim may be the subject of arbitration.

The indebtedness for the extra items in question was incurred without a vote of the people, and it remains to determine whether it exceeded the revenue and income provided for the years in which it was incurred. Of the indebtedness allowed, $2,650.00 was for items furnished in the year 1909, while the balance, which, after excluding the $900.00 item rejected by the chancellor, amounted to $1,237.00, was incurred in the year 1910. The taxable property in Lincoln county for the year 1909 amounted to $8,275,794.00. The tax levy was 50 cents on each $100.00, apportioned as follows: To pay court house bonds and interest, 3½ cents; to pay turnpike bonds and interest, 3 cents; for Preachersville and Garrard county turnpike, ½ cent; for Hubble and Hanging Fork turnpike, 2 cents; to maintain dirt roads, 9½ cents; to maintain and repair turnpikes, 18½ cents; to pay general expenses, 13 cents. There was also levied for general expenses a poll tax of $1.50 on 3,900 polls. Thus the income provided by the levy actually made for general expenses was $16,606.53, while the alleged outstanding indebtedness of the county, including current expenses, was $18,652.15.

For the year 1910 the taxable property amounted to $8,638,900.00. The tax levy was 50 cents, apportioned as follows: For maintenance and repair of turnpikes, 16½ cents; to pay interest and principal on turnpike bonds, 1½ cents; dirt roads, 9½ cents; to pay interest on principal on court house bonds, 2¼ cents; for general expenses, 20¼ cents. There was also levied for general expenses a poll tax of $1.50 on 4,225 polls. Thus the income provided by the levy actually made for general expenses was $23,831.77, while the alleged outstanding indebtedness of the county, including current expenses, was $25,993.14. Appellants insist that as the county was not authorized to levy a tax in excess of 50 cents on each $100.00 for either of the years in question, and as only the income derived from the levy actually

made for general expenses was available for the purpose of extinguishing the indebtedness in question, and as this income was not sufficient to meet the outstanding indebtedness of the county and the necessary current expenses for each of those years, it necessarily follows that the indebtedness incurred on the particular items furnished in each of those years exceeded the revenue and income provided for those years. The error in this contention grows out of the fact that, in determining whether the particular indebtedness exceeds the revenue and income provided for the year in which it was incurred, it is not the levy actually made, but the levy authorized by the constitution that controls City of Providence v. Providence Electric Light Co., 122 Ky. 237, 91 S. W. 664, 28 R. 1015; Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278; Lawrence County v. Lawrence Fiscal Court, 130 Ky. 587, 113 S. W. 824. Hence, if it appear that the county was authorized to exceed the levy actually made, and the authorized excess added to the levy actually made, would be sufficient to discharge all valid prior indebtedness, including the indebtedness in question, it cannot be said that the indebtedness in question exceeds the revenue and income provided for the year. It is now the settled rule that, subject to the provisions of section 158 of the constitution, concerning the violation of which no question is made in this case, a county may exceed the 50-cent levy for the purpose of providing a sinking fund to meet bonds voted by the people, pursuant to section 157 of the constitution. McCrocklin v. Nelson County Fiscal Court, et al., 174 Ky. 308; City of Winchester v. Charles B. Nelson, et al., 175 Ky. 63. It appears that the county levied a tax of 6½ cents for the year 1909 and a tax of 3¾ cents for the year 1910, to meet court house and turnpike bonds which had been voted by the people. It, therefore, follows that the county was authorized to exceed the levy for general expenses for the year 1909 by 6½ cents, and the levy for general expenses for the year 1910 by 3¾ cents. Had these additional levies been made, the income for the year 1909 would have been increased by the sum of $5,379.26, and the income and revenue for the year 1910 by the sum of $3,239.58. Without taking into consideration any portion of the indebtedness in question, the alleged deficit for the year 1909 was the difference between $16,606.53, the income

provided by the levy actually made for general expenses, and $18,652.15, the alleged outstanding indebtedness of the county, or the sum of $2,045.62, which, together with the sum of $2,650.00, the amount of the indebtedness which was incurred during that year, aggregates the sum of $4,695.62, or $684.26 less than $5,379.26, the amount which the county was authorized to levy for general expenses for the year 1909 in addition to the levy actually made. That being true, that portion of the debt in question that was incurred during the year 1909, together with all other alleged outstanding indebtedness of the county, did not exceed the levy which the county was authorized under the constitution to make for general expenses. Without taking into consideration any portion of the indebtedness in question, the alleged deficit for the year 1910 was the difference between $23,831.77, the income provided by the levy actually made for general expenses, and $25,993.14, the alleged outstanding indebtedness of the county, or the sum of $2,161.37, which, together with the sum of $1,237.00, the amount of the indebtedness in question which was incurred during the year, aggregates the sum of $3,398.37, or $158.79 more than $3,239.58, the amount which the county was authorized to levy for general expenses for the year 1910 in addition to the levy actually made. It will thus be seen that that portion of the debt in question incurred during the year 1910 exceeds the authorized income and revenue for that year, by $158.79. But these calculations are based on the theory that all the current expenses for the years in question were properly included in estimating the outstanding indebtedness of the county at the time the respective portions of the debt in question were incurred. While it is now settled that current expenses may be included in such estimates, yet, in order that this may be done, it must appear either that such current expenses consisted of salaries and other fixed charges necessary to the maintenance of the county government, or arose out of binding obligations incurred prior to the creation of the debt in question. After a particular debt has been incurred, the county cannot incur other debts for current expenses not indispensably necessary to the maintenance of the county government, and include such subsequent debts in its estimated liabilities for the purpose of defeating the prior debt in question. Its validity under section 157

of the constitution will depend on whether it, together with the fixed liabilities of the county at the time of its creation, excluding debts authorized by a vote of the people, exceeds the revenue and income for the year in which it was incurred. Nelson County Fiscal Court, et al. v. McCrocklin, 175 Ky. 199; Overall v. City of Madisonville, *supra;* Dillon on Municipal Corporations (5th Ed.), vol. 1, sec. 210. Perhaps a concrete illustration will indicate more clearly our views on the question: Suppose the county, after contracting for a new vault for the county clerk's office, should decide to dispose of the old furniture and purchase new furniture for the court house. In determining whether the debt for the new vault exceeded the revenue and income for the year in which it was incurred, the salaries of the county judge and other officers for the entire year must be taken into consideration, for they are fixed charges which must be met at all hazard. But the debt subsequently incurred for the new furniture should not be included, since such a debt is not indispensably necessary to the maintenance of the county government. In such a case the debt for the vault is valid if it, together with current expenses consisting of fixed liabilities, or arising out of binding obligations previously incurred, do not exceed the revenue and income for the year. On the other hand, the debt for the furniture will be invalid to the extent that it, together with current expenses consisting of fixed charges, or arising out of binding obligations previously incurred, including the debt for the vault, exceeds the revenue and income for the year.

We have frequently held that it is incumbent upon the party attacking the validity of an indebtedness of a municipality to allege and prove that the indebtedness exceeded the debt limit authorized by the constitution. City of Winchester v. Winchester Waterworks Co., 149 Ky. 177, 148 S. W. 1.; City of Louisville v. Gosnell, 22 R. 1524, 61 S. W. 476. While the proof in this case shows an expenditure for the year 1909 of $18,652.15, and an expenditure for the year 1909 of $25,993.14, and while it may be inferred that portions of these expenditures were for fixed charges, or were payments on obligations incurred prior to the creation of the debt in question, there are numerous items, undated and unexplained, not consisting of fixed charges, which, for aught the evi-

dence shows, may have arisen out of obligations incurred subsequently to the creation of the debt in question. Since the burden was on plaintiffs to show that the current expenses were such as should have been included in estimating the outstanding liabilities of the county at the time the debt in question was created, those items of current expense not shown to be properly included under the law as herein announced will have to be eliminated, and when eliminated, it is not only doubtful whether the debt in question exceeded the revenue and income provided by the levy actually made for either the year 1909 or 1910, but perfectly clear that it did not exceed the levy which the county was authorized to make for each of those years. In view of the foregoing, we agree with the finding of the chancellor "that the proof does not make it clear to the court that this indebtedness so created necessarily exceeded the debt limit provided in the constitution."

There being no cross-appeal, it is unnecessary to discuss the propriety of the judgment with respect to the claim of $900.00 for damages on account of water in the basement of the court house.

Judgment affirmed. Whole court sitting.