CASE 105—JUNE 22.

# O'Mahoney v. Bullock, &c.

### APPEAL FROM FAYETTE CIRCUIT COURT.

1. CONSTITUTIONAL LIMITATION UPON INDEBTEDNESS OF COUNTIES.—
   Sec. 157 of the constitution, in so far as it limits the indebted-
   ness of counties and taxing districts, does not require legislation
   to give it effect. Therefore a county can not incur an indebted-
   ness in excess of that limit without submitting the question to
   a vote of the people as provided in that section.

2. REPEAL OF STATUTE.—The local act passed May 3, 1890, authoriz-
   ing the Fayette County Court to purchase turnpikes and issue
   bonds in payment therefor, has not been repealed either by the
   constitution or by the various provisions on the subject of turn-
   pikes now found in the Kentucky Statutes.

3. SAME.—The principles determined in Broadus v. Broadus, 10 Bush,
   299, have no application here. The book entitled "The Kentucky
   Statutes" is not a revision of the laws of the Commonwealth, but
   merely a collection of them, and each act speaks for itself with
   respect to its effect on prior acts.

4. SAME.—TAXATION.—The provision of sec. 171 of the constitution
   that "all taxes shall be levied and collected by general laws" does
   not render inoperative a local act providing for the levy and col-
   lection of taxes for a special purpose, for if that provision has any
   application to such a state of case, the General Assembly having
   since the adoption of the constitution provided by general laws
   how all taxes may be levied and collected in behalf of the vari-
   ous counties, these general laws may be considered as amending
   or repealing the special provisions in the local act.

W. P. KIMBALL FOR APPELLANT.

1. Secs. 157 and 171 of the constitution are self-executing and do not
   require legislation to render them operative or to put them in
   force.

2. Sec. 171, which provides that "All taxes shall be levied and col-
   lected by general laws," being self-executing, destroys the valid-
   ity of the local act of May 3, 1890.

3. The act of May 3, 1890, authorizing the Fayette County Court to
   purchase turnpike roads in that county and maintain them free
   of toll to the traveling public is inconsistent with sec. 157 of the
   constitution, and the issual of the bonds and increase of the reve-

nue for the purpose of purchasing and maintaining such roads can not be made without submitting the question to the voters as is required by that section.

4. The fact that the general law passed by the General Assembly in regard to turnpike and gravel roads does not contain any provision similar to the provisions of the act of May 3, 1890, indicates that the said local act is repealed by the general one.

JOHN R. ALLEN FOR APPELLEES.

1. Sec. 157 of the constitution can not be given a retrospective operation so as to prevent a county from issuing bonds to pay for a public improvement which had been authorized by legislation before the constitution was adopted.

2. Sec. 157 of the constitution is not self-operative for the reason that it fails to provide the manner and formalities of an election to obtain the will of the people upon the question of increasing the indebtedness above the limit as indicated in that section.

3. Legislation being required to give effect to sec. 157 of the constitution, that section does not affect an indebtedness for public improvement, such as the purchase of turnpikes, authorized by legislation in force before the adoption of the constitution. (Aydelott v. South Louisville, 16 Ky. Law Rep., 166; Holzhauer v. City of Newport, 15 Ky. Law Rep., 188.)

4. The act of May 3, 1890, having been ratified by a two-thirds vote of the tax-payers and the indebtedness now sought to be repaid by the issual of bonds being thus authorized, sec. 157 can not affect the question.

5. Sec. 171 of the constitution which provides that "all taxes shall be levied and collected by general laws" does not repeal the act of May 3, 1890, so far as it provides for the purchasing of pikes and the issual of bonds for paying same, and, though it may amend or repeal the mode of levying and collecting taxes, still that fact does not affect the validity of the act, but taken in connection with the said amendatory acts the whole makes a complete law in no wise in conflict with the constitution.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The petition of the appellant, a citizen and taxpayer of the county of Fayette, seeks to enjoin the appellees, who constitute the fiscal court of the county, from issuing the bonds of the county to the amount of $16,000 in payment for the Newton turnpike, situated in the county, and which, it is

alleged, they were about to do in pursuance of act of the legislature of May 3, 1890, authorizing such issual.

It is alleged that the act is void and unconstitutional. That by the issual of the bonds the county "will become indebted for many years in an amount greater than the income and revenue provided for said years." That the defendants have not submitted to the voters of the county, "the question whether said bonds shall or shall not be issued, and two-thirds of the voters have not at any election, or in any other manner, giving their assent to the issuing of said bonds." And that the purchase of the turnpike was not effected or any improvement thereof undertaken prior to the passage of the constitution. Upon hearing, the lower court refused to grant the injunction. By consent of parties, the action was submitted to the court in the plaintiff's petition, and the same was dismissed, with judgment for the defendants' costs. The plaintiff has appealed.

The act sought to be invalidated is entitled "An act to authorize the county court of Fayette county to obtain, purchase or lease turnpike roads in said county, and maintain them free of toll from the traveling public."

It provides (1) that the county, through its county court and court of claims and levy may accept constructed turnpikes from the stockholders or owners thereof, and keep them in repair by working county convicts on them and by free labor, to be paid for by an annual tax as part of the county levy, and when thus obtained, the roads shall be free of toll from the traveling public. (2) That the county court, for the same purpose, may acquire such roads by purchase from the stockholders or owners thereof; and when thus obtained, they shall be kept up in the same way, and to pay for them, the county court may make a county levy tax.

And (3) that the county court may lease any such road on such terms and conditions as may be agreed on.

It was then provided that the county court, for the purpose of defraying the cost of such purchase or lease, might levy and collect a tax on the taxable property of the county of not exceeding twenty cents on the one hundred dollars of taxable property in any one year, to be collected in the same manner and under the same conditions as the tax in aid of the county levy; and might issue and sell a sufficient number of the bonds of the county in denominations of one thousand dollars, payable at such times and with such interest, not exceeding six per cent., as may be determined on by the court.

The act then provided for a transfer of the title of the company to the county, the appointment of a supervisor of such free turnpikes, and prescribed his duties.

The final section required the submission of the act to the approval of the voters of the county at the August election, 1890, and if a majority of the votes were cast in favor of free turnpikes, then the county court was authorized to carry the act into effect.

The chief suggestion offered by counsel for appellant, as preventing the threatened issual of the bonds, is that such action would be in violation of section 157 of the constitution.

So much of the section as is relied on, reads as follows: "No county, city, town, taxing district or other municipality shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void."

Assuming for the present that this local act has not been repealed, either by the constitution or by the general laws on the subject of free turnpikes, as found in various sections of the Kentucky Statutes, the question remains: Is the prohibition clause, quoted above, to be read into the act and form a part of it? Or may turnpikes be purchased if the debt created by reason thereof exceeds, in any year, the income and revenue provided for such year without the assent of two-thirds of the voters. It is said by the appellees that the answer to these questions depends on whether or not we are to regard sec. 157 as self-operative, and that having held in Aydelott v. South Louisville, 16 Ky. Law Rep., 166, and in Holzhauer v. City of Newport, 94 Ky., 396, that it was not so operative, the section does not affect the right of the county to incur the proposed indebtedness.

We think this contention is based on a misconception of the principles decided in those cases. The special acts there under consideration were amendments to the respective charters of Newport and South Louisville.

In the Holzhauer case, by virtue of special authority to construct certain sewers and re-construct certain streets. in Newport, contracts had been entered into, and an indebtedness thereby created before the adoption of the constitution; and in the other case, the indebtedness considered was created after the adoption of the constitution, but in pursuance of an amendment of the charter of South Louisville expressly authorizing a particular improvement, and which amendment was, in express terms, as were all charters and amendments thereto, continued in force by section 166 of the constitution. These city charters and amendments thereto were continued in force, not in so far only as they might not be inconsistent with other provisions of the constitution, as other laws of the Commonwealth were continued, but in

force save only as provided in section 167, which relates only to the election of certain officers.

But, even in cities where the increase of indebtedness was attempted only in pursuance of some general power to erect improvements, the prohibitive clauses of these sections have been held to apply.

Thus in Beard, &c., v. City of Hopkinsville, 95 Ky., 239, the city was about to create an indebtedness beyond the constitutional limit under an alleged general power, given in its old charter, but no contracts looking to that end had been made, or any debt created under that general power, prior to the adoption of the constitution. It was held that the provisions of sec. 158 prescribed a limitation on the proposed indebtedness. But, whatever effect may be given these sections as respects towns and cities, whose charters and amendments thereto were continued in force by the constitution, until general laws for the government should be enacted, there is no conceivable reason why the express prohibition found in the latter part of section 157 shall not be held effective against the creation of an indebtedness, on the part of counties and taxing districts, over their annual income and revenue without the assent of the legal voters as therein provided.

No legislative enactment could be more forceful or binding than the constitutional enactment itself.

What language could the legislature use more apt to express this inhibition than that used in the constitution, and why defer the application of these wise restraints on the power to create debts in excess of reasonable limits until the legislature might but repeat the inhibition?

It is further suggested by the appellant that section 171 of the constitution inhibits the levy and collection of taxes save by general laws, and, therefore, the provisions of the

act of May 3, 1890, authorizing the levy and collection of taxes, are inoperative.

Section 171 does provide that "all taxes shall be levied and collected by general laws," but if this provision has any application to the state of case at hand, the General Assembly has, since the adoption of the constitution, provided by general laws how all taxes may be levied and collected on behalf of the various counties, and these general laws may be considered as amending or repealing the special provisions in the local act.

The main question, however, in this case remains: Is the the local act authorizing the county court of Fayette county to purchase turnpikes and issue bonds in payment therefor, still in force notwithstanding the constitution and the various provisions on the subject of turnpikes now found in the Kentucky Statutes?

So far as the constitution is concerned, we have seen that section 157 does not affect the act except to the extent of preventing its operation, save on certain conditions. If by any purchase the county does not become indebted to an amount exceeding the revenue and income provided for the year in which such purchase is made and such indebtedness created, then the purchase may be made, but if, by any purchase, the county does become so indebted, it can not be made without the assent of two-thirds of the voters of the county, voting at an election to be held for that purpose; nor then, we may add here, in excess of the maximum percentages fixed in section 158. We have seen that section 171 does not affect the vitality of the act.

Just what general law is supposed to effect a repeal of this act of May 3, 1890, we are not told. There have been a series of acts, each partial in its scope, on the subject of turnpikes, and whether it is thought that act now sought to

be invalidated, has been repealed by some one of them, or in part by one and in part by another—piecemeal, as it were—or by the combined effect of all, we do not know. We do know that while the constitution prohibited the General Assembly from passing local and special acts, it authorized the passage of such acts to repeal local acts, and continued in force all laws of the Commonwealth not inconsistent with its provisions until altered or repealed by the General Assembly.

As we have said, certain general laws have been passed at different times and at different sessions of the legislature on the subject involved, and the question is, Do these laws, or any of them, repeal the local act?

While the framers of the constitution evinced their hostility, so to speak, toward local and special legislation, and authorized the passage only of general laws, we do not understand that the general rules of construction, by which one act may be construed to repeal another, has in any wise been changed. Among these well-settled rules are these: That a general statute will not, by mere implication, repeal a former one which is special or local; that, moreover, there must be such a repugnancy between the provisions of the acts, that they can not stand together, or be consistently reconciled. This rule applies when both statutes are of a general nature, and the presumption against repeal is strengthened when the one act is local or special and the other general. The principles determined in Broaddus' devisees v. Broaddus' heirs, 10 Bush, 299, have no application here. The book entitled "The Kentucky Statutes," is not a revision of the laws of the Commonwealth; it is merely a collection of them and each act speaks for itself with respect to its effect on prior acts. But an examination of these re-

cent acts will demonstrate that they have little in common with this local act.

There is identity neither as to the subject matter or purpose of the acts, nor of the powers given thereunder.

We have already enumerated the powers given the county court or court of claims and levy under the local act, and have seen that the particular power involved in this case is the right to acquire any turnpike road by purchase from the stockholders or owners thereof, and keep the same in repair, "free of toll from the public."

Of these subsequent acts we have:

*First,* that of August 24, 1892 (secs. 4742-4748 Ky. Stat.), providing for the appropriation of surplus funds on hand in any county, to the building and maintaining pikes or gravel roads, if a majority of the legal voters of the county favor such appropriation.

*Second,* that of May 15, 1893 (sec. 4736 Ky. Stat.), designed to prevent unjust and double taxation for turnpike roads, when the property taxed is situated in more than one district.

*Third,* that of July 6, 1893 (secs. 4734 and 4735, Ky. Stat.), authorizing the county court to subscribe stock for the county in companies organized to construct toll roads not to exceed twelve dollars and fifty cents per mile, with power to levy a tax to pay the subscription, or, when there was a surplus on hand, to independently construct such roads.

*Fourth,* that of July 10, 1893 (sec. 4723 Ky. Stat.), providing that if any incorporated turnpike road company shall fail or refuse to keep up its road or shall forfeit its charter, the county court may take charge of the road and maintain it at the expense of the county, or may erect toll-gates thereon to aid in its maintenance.

*Fifth,* that of March 3, 1894 (sec. 4737 to 4741), authoriz- ing fiscal courts to subscribe stock in turnpike road com- panies and hold the same for the public, provided a petition therefor be presented to such court, and a majority of the voters vote in favor of levying a tax to pay for such stock.

This act restricts subscription to said incorporated com- panies, which are the exclusive owners of and operating the road for their exclusive benefit. Other provisions look to the appointment of commissioners, who shall ascertain the num- ber of miles of road that can be built with the funds on hand, as provided in preceding acts.

*Sixth,* that of March 10, 1894 (secs 1886-1893 Ky. Stat.), which provides for the appropriation of surplus funds, in any county, to construct turnpike roads, and is similar in character to the act of August 24, 1892, but no vote seems to be required.

If there are any other acts on this subject they have es- caped our attention, and it is manifest that they do not sev- erally or when taken altogether constitute a systematic or comprehensive law on the subject of free turnpikes. At all events they fall far short of embracing the powers granted in the local act under consideration. This act and the general statutes may all stand together, and are in no wise inconsist- ent. We think the local act, therefore, has not been re- pealed, and under it, save so far as modified by secs. 157 and 171, of the constitution, the fiscal court of Fayette county may issue bonds in payment for pikes as provided in the act.

It is, in effect, alleged in the petition in this case that the indebtedness created by this purchase and issual of the bonds will be in excess, in a given year, of the income and revenue provided for that year. If this be true, the county can not incur the indebtedness without submitting the ques-

tion to a vote of the people as required in section 157 of the constitution.

Wherefore, the judgment is *reversed* in order that this issue of fact may be heard, if the appellee so desires, and the case tried out in conformity with the principles of this opinion.