# Payne v. City of Covington.

Dec. 16, 1938.

MARION MOORE for appellant.

RALPH P. RICH for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Covington, a city of second class, brought this action against R. S. Payne, a resident and taxpayer of the city, on his own behalf and on behalf of all citizens, residents and taxpayers thereof, seeking judicial approval of a proposed bond issue of $275,000, as authorized by ordinance of the city to fund a floating indebtedness in that sum.

On final hearing the chancellor held that all the floating indebtedness proposed to be funded was valid and subsisting indebtedness of the city and had been incurred within the limits prescribed by both sections 157 and 158 of the Constitution as heretofore construed and that in incurring same the officials of the city had exercised due regard for its finances and therefore were entitled to issue bonds to fund the indebtedness and the bonds when issued, sold and delivered would constitute a legal, valid and binding obligation of the city. The defendant is appealing.

Counsel for appellant argues in effect that the question is controlled by sections 3072, 3073, 3088 to 3091 of the Statutes relating to municipalities of the second class. However, note is made of the fact that this court has held in numbers of cases that a valid floating indebtedness incurred within the limits fixed by sections 157 and 158 of the Constitution may be funded by the issuance of bonds. It is further asserted that those sections of the Constitution are not self-executing and no legislation has been enacted to give them effect. The brief also (and apparently as a formality) challenges the soundness of the interpretation placed upon those sections by the court in cases of this character.

This court has held that in determining the validity of an indebtedness of counties or municipalities, sections 157 and 158 must be read together. Knipper v. City of Covington, 109 Ky. 187, 58 S. W. 498, 22 Ky. Law Rep. 676. They are self-executing and require no legislation to give them effect. O'Mahoney v. Bullock, 97 Ky. 774, 31 S. W. 878, 17 Ky. Law Rep. 523.

Unusual care has been exercised in the preparation and prosecution of this suit to make it conform to and comply with the sections, supra, of our Constitution and the provisions of section 186c-6 and 186c-7 of the Statutes *as construed by former decisions of this court.* The petition and exhibits filed as a part thereof set forth the amount of the floating indebtedness, when, how, and for what purposes it was incurred, the assessed valuation of the property for the purpose of taxation for the years involved, the amount of the levy, the sums it would produce and the sum that would have been produced if the maximum levy permitted by section 157 of the Constitution has been made; the total indebtedness of the city including the floating indebtedness proposed to be funded and shows that same was well within the limits fixed by section 158 of the Constitution. The exhibits filed with the petition show each item making up the total floating indebtedness. The evidence shows, as is alleged, that the levy fixed for the years in question was approximately $1.29 when it might have been $1.50; that out of the levy so made the city would have been able to meet all indebtedness incurred except indebtedness incurred to repair damages done by the unprecedented flood of 1937; that all indebtedness incurred for the year in question including the floating indebtedness proposed to be funded did not exceed in amount a sum that would have been realized if the maximum levy permitted by the Constitution had been made. It is therefore apparent that if we adhere to the rule laid down in the case of Vaughn v. City of Corbin, 217 Ky. 521, 289 S. W. 1104, and a number of subsequent cases of the same tenor, the judgment of the chancellor is correct and should be sustained.

Section 157 of the Constitution reads in part:

"No county, city, town, taxing district, or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income

and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose.''

This provision is mandatory and not a mere restriction upon the power of the Legislature to enact laws respecting the subject with which it deals. It leaves nothing to the discretion of the Legislature, judiciary or administrative officials but to obey and scrupulously regard it. It is a fundamental law of the commonwealth requiring no legislative enactment or judicial interpretation to give it effect. Language could not be chosen to make it more comprehensive as respects the matters with which it deals since it includes within its scope any and all indebtedness without regard to its nature or purpose or the manner in which it may be incurred. Not only so, but it is as clear, plain and unambiguous as it is comprehensive since it leaves nothing to doubt or uncertainty concerning its purposes and meaning and the mischief it was intended to prevent. Its manifest purpose was to inaugurate and perpetuate the ''pay-as-you-go'' plan of government in the subordinate branches mentioned and to prevent fiscal authorities invested with the power to appropriate public moneys from incurring obligations in excess of the income and revenue actually provided for by levy or otherwise. To say that the words ''income and revenue provided for such year'' contemplate or mean the maximum levy that might have been made under section 157, supra, is, as is pointed out in the dissenting part of the opinion in the case of Hill v. City of Covington, 264 Ky. 618, beginning on page 623 of the Kentucky Reports, 95 S. W. (2d) 278, and in the dissenting opinion in City of Frankfort v. Fuss, 235 Ky. 143, 29 S. W. (2d) 603, to license officials to make levies below the maximum allowed in order to curry public favor and then to make expenditures in excess of the income and revenue provided by such levies and otherwise and thus from year to year incur floating indebtedness to be later funded and passed on to future generations. Such a construction subverts and defeats the clear and manifest purpose of the Constitution.

The framers of our Constitution who gave multiplied months to preparation of the instrument which was later ratified and adopted by the people, knowing the general tendency of governments and especially sub-

ordinate taxing divisions thereof and their officials to run into debt and incur liabilities that would affect their faith and credit and impose onerous burdens upon the tax paying public placed these positive and wise limitations upon the powers of the counties, towns, etc., to incur debts or impose liabilities upon themselves beyond the limitations prescribed in the quoted provisions without referring the proposition to the voters for approval. Knowing also that the electorate through zeal or improvidence is often inclined to assume excessive and burdensome indebtedness, they inserted section 158 of the Constitution as a further safeguard limiting the total amount of indebtedness that might be incurred by a political subdivision in any manner whatsoever, even by a vote of the people.

Beginning with City of Providence v. Providence Electric Light Company, 122 Ky. 237, 91 S. W. 664, 28 Ky. Law Rep. 1015, and followed by Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 31 Ky. Law Rep. 278, 12 L. R. A., N. S., 433, and Carter v. Krueger & Son, 175 Ky. 399, 194 S. W. 553, it was held in effect that "the revenue provided for the year" as used in the quoted excerpt from section 157, supra, did not mean the revenue actually levied but the revenue that would be produced from a levy of the maximum amount provided for in that section. Then came Vaughn v. City of Corbin, supra, citing those cases as authority for approving the issuance of bonds to fund a floating indebtedness incurred during former years which in connection with other indebtedness incurred during the same years, exceeded the amount that was realized from the ad valorem levy made, but did not exceed the amount that would have been realized if the maximum levy allowed by the Constitution had been made. In City of Frankfort v. Fuss, supra, the rule announced in the former cases referred to was followed, however, three members of the court, believing that it had fallen into error in construing the constitutional provisions under consideration, voiced their disapproval and the reasons therefor in a vigorous dissenting opinion, and have never become reconciled to the holding in the majority opinion as is evidenced by dissents in subsequent cases of like character, the last of which appear in the Hill Case, supra.

The undoubted purpose of the makers of the Con-

stitution and of the people in adopting the inserted language, supra, of section 157 and its limiting language found in section 158 was to require counties, municipal corporations and other tax levying political units to conduct their affairs on the "pay as you go" plan, as is not only clearly evidenced by the language itself, but which has also been interpreted by all courts before which questions arising thereunder have been presented, and by recognized law-writers on the subject as the declared and undeviating interpretation that should be given such limiting language. We need insert the texts to that effect of but one leading author, which is Mr. McQuillin in his latest revision on Municipal Corporations, volume 6, section 2365, page 10. It says:

"In some states, including Kentucky, Louisiana, Missouri, Oklahoma, Utah and Wyoming, in addition to a constitutional provision limiting the indebtedness to a certain per cent of the value of the property of the municipal corporation (in section 158 of our constitution) the constitution or statute provides that no municipal corporation shall incur indebtedness in any one year in excess of the income and revenue provided for such year, at least without consent by a vote of the people in favor thereof. The constitutions of California and of Idaho also contain such provisions, in which states there is no other fixed debt limit. These provisions, require municipal corporations to adopt the safe, sane and conservative plan of pay as you go; consequently *each year's income and revenue* must pay *each year's indebtedness* and liability and no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year. Such constitutional provision precludes the incurring of further indebtedness for any purpose, including pressing wants, during the current year, after the income and revenues for that year have been exhausted, except that certain indebtedness is sometimes expressly excepted by the constitution from the operation of such a provision." (Our italics).

In the notes to the text its statements are fortified by long lists of cases coinciding therewith. It will be noted that the text was written and published long after the rendition of our opinion in the City of Providence

Case, supra, and it is to be presumed that the learned author was aware that it had been rendered and was also acquainted with all of our following opinions interpreting the City of Providence Case as holding that such political subdivisions of the state could incur indebtedness (payable by ad valorem taxes) up to the maximum constitutional rate of taxation that they were permitted to levy, notwithstanding they failed to do so and without any constitutional provision requiring them to do so. It is, therefore, fair to presume that the learned writer of the text regarded such interpretation as so completely unfounded as to attribute no weight to it in modifying the unmistakable rule set down in his text. That unmistakable rule is more than easily demonstrable by a mere analysis of the language found in the two sections of the Constitution referred to.

The first part of section 157 is nothing more nor less than the fixing of a maximum rate of ad valorem taxes that the involved political units might levy. Of course, that meant that they could not levy a rate—except in the provided exceptional cases—beyond that maximum, and, as pointed out in the dissenting part of the opinion in the Hill Case, supra, there would have been no use whatever in inserting that part of the section heretofore incorporated if the interpretation heretofore followed, beginning with the City of Providence Case, was the correct one. The question, after all, with reference to the limitation provided in that section (157) is, to whom was the word "provided" intended to be directed. It was known by the Constitution makers that such political units, or at least some of them (municipalities) were authorized to provide revenue by license taxes, excise taxes, occupational taxes, operation of municipal utilities, and perhaps other sources, and the Constitution makers clearly intended to provide for a "pay as you go" plan and to forbid and withhold authority to such taxing units to become indebted in any one year in an amount exceeding the revenue *it* might *provide* through all the sources allowed to it for that year without the assent of the voters as therein prescribed, and section 158 forbade the incurring of indebtedness beyond a fixed per cent of the property, even by a vote of the people. The interpretation heretofore given, beginning with the City of Providence Case, is in direct conflict with such clear intent and

purpose, and instead of requiring the observation of the intended "pay as you go" course, it opened wide the door for such political units to accumulate each year an indebtedness equal to the amount that could have been met by the levying and collection of ad valorem taxes up to the maximum limit prescribed in the first part of section 157, without levying any rate at all for that purpose. To our minds there could scarcely be a more erroneous interpretation, since it permitted that to be done which the Constitution had clearly intended to prevent and no interpretation could have been more destructive of such intent than the one adopted and followed since the rendition of the City of Providence Case.

An examination of that case shows that the language of the opinion applicable to the question was in fact dictum, and the following opinions were in reality founded on that dictum. By the employment of the word "dictum" with reference to the City of Providence opinion we mean that it was unnecessary to so construe the sections of the Constitution under the facts of that case. The debt there involved could have been met through a levy by the city of a higher rate of taxation than it did levy for the year the debt was created and the creditor sought to require the city to make a levy, within the constitutional limitation, sufficient to pay his debt, or at least that was his contention in the case and that was the question decided, i. e. that the city could be made to do so. But as we have seen, the excerpt from McQuillin (and which is in accord with all other text writers and opinions) says:

"Each year's income and revenue must pay each year's indebtedness and liability, and no indebtedness or liability incurred in any one year shall be paid out of the income or revenue of any future year."

So that, when any particular fiscal year has expired, and no requirements of an additional levy is sought by a creditor or otherwise, an effort to do so after the expiration of that fiscal year comes too late and cannot be sustained. Opinions following the City of Providence Case construed its opinion as holding that any debt incurred in any year which the maximum rate provided for in the Constitution, if levied and collected would meet, then that debt was valid and could be enforced at

any time in the future within the period of the prescribed limitation. So that, as a matter of fact our grossly erroneous interpretation has been built upon an erroneous construction of the City of Providence Case. We call attention to that fact only for the purpose of furnishing an additional reason why that interpretation should no longer be followed.

Moreover, it is highly probable that the expressed reason, supra, for the conclusion reached in the City of Providence Case was and is erroneous, since it is the duty of all persons dealing with political subdivisions of the government to do so at their peril and to take notice of the limitations of their powers and authority. If, therefore, the Constitution of the state, of which they form a part, or their charters, where one is required, or any valid statute limits their authority, one dealing with them must take notice thereof and govern himself accordingly, which means, of course, that if his transaction creates a debt exceeding that authority he must suffer the consequences. Such political units speak by their records which are always open to the public and anyone contemplating dealing with them may easily inform himself as to the status of the affairs of the particular unit with which he proposes to deal. If, therefore, it can become indebted only by pursuing a prescribed course, which it has failed to follow, such fact can be easily ascertained and action taken accordingly.

The rule announced in the domestic cases referred to lets down the barriers to the mischief obviously intended by the framers of the Constitution to be prohibited, and invited an orgy of maladministration waste of public funds and accumulation of indebtedness in counties and municipalities of alarming and in many instances ruinous proportions, which inevitably follow in the wake of judicial pronouncement removing restraint and limitations upon public expenditures and the creation of public indebtedness. The court can only view with regret the mischief already wrought under sanction of its decisions in giving a clearly strained and erroneous interpretation to the involved sections of the Constitution, however, and as will later be pointed out, the court is not by any rule of stare decisis or long continued erroneous construction rendered powerless to remedy the ills arising from its erroneous prior interpretations but may with propriety and so far as is con-

sistent with vested rights acquired or acts done on faith of its decisions subordinate that rule when justice and public welfare make such a course preferable to perpetuation of error.

By way of illustration, and to more firmly establish the principle that such constitutional limitations of the character of indebtedness here involved should be liberally construed so as to accomplish their wholesome purpose, we cite the text in volume 1 of Dillon on Municipal Corporations, fifth edition, sections 190 to and including 195, and being on pages 336 to and including 359. A due regard for the limits of the length of an opinion prevents us from inserting lengthy excerpts therefrom; but from section 191 we take this language:

"The purpose of these constitutional provisions is effectually to protect persons and property in municipalities from the abuse of the corporate credit and the consequent burdensome, if not ruinous, taxation. This end is sought to be attained by placing an absolute limit which shall not be exceeded in incurring indebtedness; when a city has once reached this limit, it is intended that its affairs shall be conducted on a cash system, or 'pay as you go' basis. These provisions are negative or prohibitory in their effect; when found in a constitution, they are generally self-executing, and do not require the aid of a statute. The limitation found in the Constitutions operates upon the power of the legislature to authorize or create municipal debt, as well as upon the action of the *municipal authorities* in incurring indebtedness." (Our italics.)

See, also, the cases of Doon Township v. Cummins, 142 U. S. 366, 12 S. Ct. 220, 35 L. Ed. 1044; City of Guthrie v. New Vienna Bank, 4 Okl. 194, 38 P. 4; Superior Manufacturing Company v. School District No. 63 Kiowa County, 28 Okl. 293, 114 P. 328, 37 L. R. A., N. S., 1054; Feil v. City of Coeur D'Alene, an Idaho case reported in 23 Idaho 32, 129 P. 643, 43 L. R. A., N. S., 1095; Re Town of Afton, 43 Okl. 720, 144 P. 184, L. R. A. 1915D, 978; Grand Island & Northern Wyoming Co. v. Baker, 6 Wyo. 369, 45 P. 494, 34 L. R. A. 835, 71 Am. St. Rep. 926, and others referred to in those opinions.

In the case of Barnard & Co. v. Knox County, 105

Mo. 382, 16 S. W. 917, 13 L. R. A. 244, the Supreme Court of that state adopted the view herein expressed as to the correct interpretation of similar constitutional provisions with reference to the incurring of indebtedness by governmental political units. In that opinion it overruled a similar prior interpretation that had been made by the same court in the case of Potter v. Douglas County, 87 Mo. 239, 240, and the action of the Supreme Court of that state in its latter opinion parallels our action herein in overruling such prior erroneous interpretation of its constitutional provisions relating to the subject matter in hand. Further insertion from the texts and opinions referred to, and a consultation of cases therein cited, demonstrates beyond all doubt the incorrectness of the interpretation heretofore followed by this court, beginning with the City of Providence opinion, and with equal force it also demonstrates the correctness of the one herein adopted by us.

But it is said that the doctrine of stare decisis prevents us from overruling our former opinions and compels us to continue to follow them, howsoever erroneous they may be. In the very recent case of Liberty National Bank & Trust Co. v. Loomis, 275 Ky. 445, 121 S. W. (2d) 947, the same question was presented to us and we followed the doctrine in that case—not because we concluded that it constituted a barrier against our determining otherwise—but because we thought the question involved, and which our prior opinions had determined, was correctly determined by such prior opinions. During the course of that opinion we said [page 949]:

"From an examination of the cases and authorities referred to it will be found that in *no state of circumstances does* the stare decisis rule require courts to continue to adhere to a *clearly* demonstrated erroneous opinion, although they are much more reluctant to depart from the law as declared in a prior opinion when such declaration affects individual property rights and commercial transactions whereby such rights are acquired." (Italics ours.)

We referred in that opinion to the recent prior one of Hubley's Guardian v. Wolfe, 259 Ky. 574, 82 S. W. (2d) 830, 101 A. L. R. 1359. In referring to the binding force of the stare decisis rule in that opinion we said [page 835]: "The stare decisis doctrine is entitled to

great weight and should be adhered to, unless the principle established is *clearly* erroneous,'' etc. (our italics).

Mr. Cooley in his great work on Constitutional Limitations, 8th edition, vol. 1, on page 120, in dealing with the rule as applied to interpretation of Constitutions, says:

> ''It will, of course, sometimes happen that a court will·find a former decision so unfounded in law, so unreasonable in its deductions, or so mischievous in its consequences as to feel compelled to disregard it.''

In note 2 cited to that text is the case of Union Trust Company v. McGinty, 212 Mass. 205, 98 N. E. 679, Ann. Cas. 1913C, 525. It exhaustively deals with the scope, effect and binding force of the doctrine (stare decisis) and we unhesitatingly recommend it to the reader. The foundation upon which all of the discussion therein made is based is found in this excerpt therefrom:

> ''The doctrine ·of stare decisis, like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason.''

Of course, all of the authorities say that more hesitation will be indulged against overruling prior opinions establishing property rights than in cases where such rights are not established. But no case that we have been able to find attributes such binding force to the rule as compels courts to continue to follow prior erroneous opinions to the detriment of the public interest, and when prior erroneous opinions are not only without reason to support them, but are in direct conflict with what was intended by a statute, a Constitution, or by the parties to a contract. Of course, the doctrine of stare decisis is quite apart from and has nothing to do with those of res adjudicata and of what is known as ''the law of the case'' rule—both of which are founded upon entirely different considerations. We, therefore, conclude that if there ever was a case where the doctrine of stare decisis should not prevent us at this time from correcting the glaringly erroneous opinions heretofore

prevailing on the question in hand, it is this one, and we unhesitatingly disallow its urged effect in this case.

But it might be said that property rights have been created in following our prior interpretations of the sections of the Constitution referred to, and which is true. We conceive, however, it to be competent for a court, in overruling a prior adopted principle, to preserve in the overruling opinion all rights accrued under the prior declaration, the same as if they had been created or arose out of a former existing statute which was later repealed by the Legislature. That right was expressly declared by the Supreme Court of the United States in the case of Great Northern Railway Company v. Sunburst Oil & Refining Company, 287 U. S. 358, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254; Gelpcke v. Dubuque, 1 Wall. 175, 17 L. Ed. 520; Haskett v. Maxey, 134 Ind. 182, 33 N. E. 358, 19 L. R. A. 379; Mason v. A. E. Nelson Cotton Company, 148 N. C. 492, 62 S. E. 625, 18 L. R. A., N. S., 1221, 128 Am. St. Rep. 635; Kelley v. Rhoads, 7 Wyo. 237, 51 P. 593, 39 L. R. A. 594, 75 Am. St. Rep. 904; Douglass v. County of Pike, 101 U. S. 677, 25 L. Ed. 968. The right was also approved by us in the case of Oliver Co. v. Louisville Realty Company, 156 Ky. 628, 161 S. W. 570, 51 L. R. A., N. S., 293, Ann. Cas. 1915C, 565. See, also, Illinois Cent. Railway Company v. Applegate's Adm'x, 268 Ky. 458, 105 S. W. (2d) 153 and the text in 7 R. C. L. page 1010, section 36, which is directly in point and conclusively establishes the authority of our appellate court to preserve prior rights created and emanating from overruled decisions.

Therefore in overruling our prior opinions and in declaring our disapproval of such erroneous interpretations herein dealt with, we do so with the express reservation that all rights heretofore created and accrued in favor of all persons interested, in any manner whatsoever, shall be preserved and the principles of this opinion will not apply to any transaction begun or in the course of completion, or finished before this opinion becomes final. But the various taxing units of the commonwealth embraced by the two sections of the Constitution, supra (157 and 158) shall, after this opinion becomes final, observe and be governed by the interpretation herein made, and shall contract no debts beyond the amount of revenue which they themselves provide under authority given to them by the Constitution or

Statutes legally enacted thereunder. Therefore, if they wish to incur debts in any fiscal year they must not exceed in the aggregate what they themselves produce under the authority so given to them, and that any indebtedness in excess of what they do so produce, shall be void. As a consequence of the conclusions we have reached the opinions in the cases of City of Providence v. Providence Electric Light Co., supra, Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 31 Ky. Law Rep. 278, 12 L. R. A., N. S., 433; Carter v. Krueger & Son, 175 Ky. 399, 194 S. W. 553, and all others following the interpretations therein made, are hereby expressly overruled; but with the reservation, supra, whereby the rights of all parties are preserved, and this opinion shall have a prospective effect only.

However, the withholding of any retroactive effect of this opinion requires an affirmance of the judgment, since compliance is shown with the erroneous interpretations heretofore made. Wherefore, the judgment of the lower court is affirmed.

The whole court sitting.