# Payne v. City of Covington.

Oct. 4, 1940.

Rodney G. Bryson, Judge.

William J. Deupree for appellant.

Stanley Chrisman for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellee instituted this action against appellant, a resident taxpayer, alleging that it was indebted to various persons, including banks, in the sum of $475,964.10 "all of which is due for services, money, supplies and governmental service furnished said City for the payment of which there are no funds available" as shown in exhibits compiled by an auditor and filed with the petition; that for the year 1938, a tax of $1.29

per $100 had been levied out of the proceeds of which it was obligated to pay and did pay $286,098.78, principal and interest on bonds theretofore issued for which no special provision as required by Section 159 of the Constitution had been made during previous years; that the tax delinquencies for 1938 amounted to $89,847.07 and for the year 1939 to $137,404.71, a total of $227,251.78, "without estimating the $286,098.78 taken from the $1.29 levy for 1938 by which the General Fund for that year is seen to be depleted, or, a total shortage in said Fund of $589,779.84 for the fiscal years 1938 and 1939"; and that to meet this situation the appellee raised the tax levy to $1.58 per $100 (for the year 1940) of which "$.47 are allocated to interest and sinking fund on the outstanding voted bonds and from which remainder of $1.11 for the General Fund it is enabled to liquidate $125,964.10 of the aggregate $475,964.10 of the floating debt evidenced by Exhibit A hereto"; and that "in order to avoid the accumulation of interest at 6% per annum on such remainder of $350,000.00 your petitioner through its governing body on May 17, 1940, on its second reading adopted 'Commissioners' Ordinance No. 3158' providing for the payment of such floating debt and the issuance of funding bonds in the amount of $350,000.00 with the proceeds of which to pay such portion thereof as cannot be paid out of the income for 1940."

Because the pleader chose to refer to a complicated auditor's report rather than set forth the full facts and figures in his petition, the task of determining the actual situation has been greatly augmented. However, we are able to ascertain that the City desires to issue bonds of the par value of $350,000 bearing not more than 3¼ per cent. per annum interest in order to liquidate that amount of a total floating indebtedness of approximately $475,000, the remaining $125,000 to be paid out of increased taxes for 1940; and that the deficiency of $589,779.84 in the General Fund has been caused in part by the inability of the City to collect levied taxes for 1938 and 1939 totalling $227,251.78 and its expenditure during 1938 of $286,098.78 in discharge of voted bonded indebtedness created under the provisions of Section 157 of the Constitution. It is alleged and shown by the proof that the assessed value of property in the City for 1938 was $57,177,733 and for 1939, $58,374,743, and

that its total bonded indebtedness exclusive of the proposed issue is $3,131,500. It is therefore apparent that the proposed bond issue would not increase the bonded indebtedness beyond that permitted by Section 158 of the Constitution, limiting it to 10 per cent. of the value of the taxable property.

From the record before us it would seem that if the City had been able to collect the full amount of the taxes levied for 1938 and 1939, $227,251.78, and had levied sufficient taxes as it might have done within constitutional limitations to meet the requirements of its bonded indebtedness, the floating indebtedness of $475,964.10 could have been liquidated out of current revenues. Appellee's counsel concedes that under the opinion of this court in the case of Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321, it is no longer permissible for a city to adopt an insufficient tax rate, less than that permitted by the Constitution, and thereafter issue bonds to cover the deficit, under the previously prevailing rule that the excess indebtedness was validly incurred if the total indebtedness did not exceed the amount which might have been realized if the maximum rate had been imposed. But he argues that since the opinion in that case was delivered on December 16, 1938, and expressly stated that the former opinions of the court permitting such a practice were overruled with the reservation that all rights theretofore created and accrued should be preserved and that the principles announced should not apply to any transactions begun before the opinion became final, the payments which the City was required to make in 1938 on its bonded indebtedness should be excluded from consideration in determining whether the floating indebtedness was contracted in violation of Section 157 of the Constitution. In this contention he is correct, since the maximum rate would have provided sufficient funds and the City had the right to assume that the taxes levied would be collected.

But the fact, if it is a fact, that the indebtedness was not incurred in violation of Section 157 of the Constitution and that the proposed bond issue would not increase the City's indebtedness beyond the maximum permitted by Section 158, does not dispense with the necessity of complying with the provisions of Section 186c-7, Kentucky Statutes, and proving that the debts

constituting the floating indebtedness sought to be covered by the issue were in all particulars valid obligations of the municipality. This the appellant has failed to do.

The items comprising the floating indebtedness are set forth in a list filed with the petition as an exhibit, but this list merely shows the names of the persons to whom the vouchers were issued, their dates, numbers and amounts. Near the end of the list appears a number of vouchers bearing a 1940 date and opposite them is a lead pencil notation "1939 obligation." Then appears a series of items under a heading "Not vouchered 3/8/39" and another series of 1940 vouchers under which is a similar lead pencil notation. To illustrate the type of data with which we have been furnished, we copy the last page of the last series of 1940 vouchers referred to.

"No. 24

| Vouchers Issued To | Date | Voucher Number | Amount of Voucher |
|---|---|---|---|
| Stephen L. Blakely | 1-8-40 | 940 | 208.38 |
| Sawyer A. Smith | 1-10-40 | 984 | 2,500.00 |
| Do | 1-10-40 | 985 | 1,212.39 |
| Do | 1-10-40 | 986 | 11,010.00 |
| Chas. K. O'Connel | 1-16-40 | 1070 | 26.75 |
| Union Light Heat & Power Co. | 1-31-40 | 1212 | 10,912.87 |
| Board of Education | 2-20-40 | 1319 | 9,382.60 |
| | | | 475,964.10" |

A mathematical calculation shows that the unvouchered items have not been included in the grand total but that the 1940 vouchers have been included.

The only proof introduced concerning the items of alleged indebtedness is the testimony of the City Comptroller who, after stating that the list reflected the amount of the City's floating indebtedness as of December 31, 1939, testified that an item styled "Payroll Account 12/30/39 Voucher No. 854, $26,157.57" represented the City employee payroll for the last half of December, 1939; that a voucher bearing the same date to the First National Bank for $76,429.38 was for money borrowed to pay the January 1, 1940, bond and interest coupon maturities; that a voucher to the same bank bearing the same date for $60,000 was "a reborrowing of an existing note on which delinquent taxes were pledged" and that "approximately" $190,000 of the

852

floating indebtedness represented by vouchers appearing on the list was in payment for "power and lighting used in city purposes," although he was unable to state over what period it had accrued.

The statute, in addition to requiring proof of the validity of the indebtedness as a condition precedent to the approval of bonds to be issued for its liquidation, provides that such approval shall be withheld if it appears that the officials in office at the time of the creation of such indebtedness have not had due regard for the finances of the municipality "during the time in which said indebtedness was created". While the testimony in the record before us indicates that the present officials of the City are making a praiseworthy effort to remedy the conditions which resulted in the deficiencies of revenue, it is difficult to escape the inference that their predecessors had less than due regard for the City's finance.

In the case of Ebert v. Board of Education, 277 Ky. 633, 126 S. W. (2d) 1111, we announced the rule that in future where cases of this nature had been insufficiently prepared, we would nevertheless on reversal direct the character of judgment to be entered, which rule, literally applied, would compel us to direct a dismissal of the petition. However, since it is probable from the showing made that a portion if not all of the proposed issue could be validated upon a proper showing, we have concluded that the ends of justice require that an opportunity be afforded the City to supply the deficiencies in the present record and make clear and specific by detailed proof, summaries and intelligible exhibits directed solely to the questions necessary to be determined, its asserted right to the relief sought.

The record in its physical aspects is one of the worst we have been compelled to condemn in recent years. It consists largely of copies, one of them carbon and almost illegible, hastily thrown together without an adequate index. Under Rule 3, Section 18, of this court, the Circuit Court Clerks' compensation for preparing the record is reduced by 25 per cent.

The judgment of the chancellor validating the proposed bond issue is reversed for proceedings consistent with this opinion.

Judgment reversed.