## Moss v. City of Paducah.

Jan. 14, 1941.

Herbert Schultzman for appellant.

Adrian H. Terrell for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

Two questions are presented by the case. One is the validity of a proposed issue of $64,000 funding bonds by the City of Paducah and the other the authority of the commissioners of the sinking fund to use part of the surplus on hand to buy the issue. The circuit court adjudged the bonds to be valid and that the commissioners were without authority to make the investment.

The debt to be funded is said to be a net accumula-

tion incurred during 1936, 1937, 1938 and 1939 because the expenditures during that period exceeded the collections but not the revenues provided. The practice of the city was to borrow money from banks in anticipation of the revenues and to pay the notes annually, leaving open accounts unpaid and carrying them into the subsequent year. When funds for that year were obtained by new borrowing the accounts would be paid. On December 31, 1939, the city owed $64,627.24, of which $64,000 was subsequently evidenced by notes to two banks given in August and September, 1940.

For 1936 it is proved that the tax rate was $1.38 and there was a failure of collection of $43,244 (over 17 percent), nevertheless there was a surplus of $41,165.36. For the year 1937, with the same tax rate, there was a failure of collection of $36,200 (over 15 per cent) and a deficit of $4,229.41. For 1938 the maximum rate of $1.50 was levied and the failure of collection was $48,791 (nearly 18 percent), and a deficit of $20,390.64. For 1939, with the same rate, the failure of collection was $33,263 (nearly 13 percent) and a surplus of $7,605.66. Thus for the four-year period the revenues exceeded the expenditures by $24,150.97. The evidence in the case starts with the showing of a debt on December 31, 1935, of $56,813.07 after applying the proceeds of funding bonds issued in February, 1936. Deducting from that debt the net surplus for the ensuing four years of $24,150.97, the debt is shown to be only $32,662.10 instead of the claimed debt of $64,627.24. However, in the summarized financial statement filed by the city treasurer appears an item in the year 1936 as deducted from the surplus of that year of $41,165.36, "less I. C. franchise collected in 1936 but due in 1935, $31,965.14." The deduction makes the surplus of that year only $9,200.22. No explanation is given for deducting this item. It makes the difference between the net debt of $32,662.10 at the end of four-year period as we find it and that claimed. It would appear that the item had been anticipated in 1935, for if it be added to the sum with which the statement starts the floating debt on December 31, 1935, would be $88,778.21, and when the net surplus of the four-year period is deducted, $64,627.24 is the net debt at the end.

There is another way to look at these figures which discloses the confusion or at least the obscurity of the

proof. If the franchise tax collected in 1936, but due in 1935, amounting to $31,965.14, be put back as a collection in that year (as it must have been to justify deducting it from 1936 receipts), the debt on December 31, 1935, would be $24,847.93 instead of $56,813.07. Taking the remaining surplus of revenues over expenditures in 1936 and 1939 amounting to $16,805.88, and the deficits incurred in 1937 and 1938, amounting to $24,690.05, we have a net deficit for the four-year period of only $7,884.17. Adding this to the re-adjusted debt on December 31, 1935, again we have a total debt of $32,732.10 on December 31, 1939, instead of $64,627.24.

There is no evidence whatever in the record concerning the validity of the debt on December 31, 1935, whatever sum it may actually be. It is merely assumed to be valid and binding and the case is built upon that assumption. The importance of the failure of proof in this particular is accentuated by reference to the opinion of Jones v. City of Paducah, 263 Ky. 542, 92 S. W. (2d) 811. In that case approval was sought of a bond issue of $150,000 to fund a floating debt that had accumulated during the years of 1933, 1934 and 1935. The circuit court had approved bonds to the amount of $144,000. On review we found that bonds to the amount of only $121,400 were proved to be valid, but that a portion of $22,600, alleged to be due the city board of education, could be added when the amount actually owing should be finally adjudicated. It may be that $11,600 of this was found to be a valid obligation and that sum was included in the issue, for this record shows that the proceeds of that issue to the amount of $133,000 was applied on a floating debt owing December 31, 1935, thereby reducing it (as shown on the statement) to $56,813.07.

On the surface it seems that at least a substantial part of the additional debt of $88,778.21 on December 31, 1935, carried over into 1936 and reduced during the four years to $64,627.41 was not valid. Certainly, under the provisions of Section 186c-6 et seq., Statutes, it was incumbent upon the city to establish the validity of the debt thus carried over into the subsequent period. If in fact that obligation was invalid its payment which resulted in later deficits did not create a valid debt in the year in which payment was made. Cf. Williams v. Board of Education of Paintsville, 274 Ky. 624, 119 S. W. (2d) 642.

Though the suit is given the appearance of a contest, it is clearly an ex parte proceeding. The appellant has filed no brief and we have been burdened with the necessity of making the calculations and examining the record without any help from the nominal contestant. Appellee's brief is devoted to the general rulings of the court relating to the approval of proposed bond issues, and points out that the case is not to be determined by the decision in Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321. The brief does not undertake any explanation of the situation developed above. We are of opinion, therefore, that the circuit court was in error in approving the bonds.

Upon the pleading and proof the court found that the city had a surplus accumulation of $176,436.97 in its sinking funds and by reason of postponement of maturity of a large part of the principal of some of the bonds until the year 1962, the money would not be required for its retirement during the life of the proposed issue. But the court was of opinion that the terms of Section 3194, Kentucky Statutes, under which the city claims the right to invest a portion of the money in the proposed issue does not authorize the investment. The material part of that section is as follows:

"Said commissioners are required, whenever there shall be an accumulation of money in the sinking fund over and above the amount required for promptly meeting the interest on the bonded indebtedness of the city, to redeem or purchase the outstanding bonds and interest coupons of the city chargeable to said fund, when they can do so on fair terms and at a price not exceeding the market value thereof and such bonds and coupons shall be reported to the general council or other governing body of said city and be cancelled and a correct record of same with date of cancellation preserved in the office of the auditor. Whenever there shall be a surplus of said funds which cannot be applied on such terms to the extinguishment of said liabilities, the commissioners may invest the same in bonds of said city, for which it is liable in its corporate capacity, or in bonds of the state of Kentucky or of the United States; or may invest said funds in such other interest-bearing or dividend-paying securities as now authorized, or which may

hereafter be authorized, by Kentucky Statutes, § 4706, or other general law of the state, for the investment of funds held by persons or corporations in a fiduciary capacity.''

The statute requires that the surplus of money in any sinking fund not presently needed to meet interest shall be used to redeem or purchase the outstanding bonds chargeable to that particular fund when it can be done ''on fair terms and at a price not exceeding the market value thereof.'' If that cannot be done then— but only then—such surplus may be invested in other bonds of the city or of the state or United States or in other securities permitted by law. It is deducible from the record that there are ten different bond issues outstanding. Copies of eight ordinances covering different issues are filed. According to their terms some of the bonds are past due, others are redeemable on call, but a large amount does not mature for a number of years and are not subject to prior redemption. The record discloses that of the surplus in the sinking fund, $106,620.73 is for school improvement bonds; $68,265.21 is for ''principal of other municipal bonds''; and $1,551.03 for ''interest on other voted bonds.'' There is no ordinance covering school improvement bonds in the record, so we are left in the dark as to whether such bonds are presently redeemable. Since it is not proved that such or any bonds for which there is money in the sinking fund could not be called or purchased according to the terms of the statute, the circuit court properly adjudged that the money could not be invested in any other issue, particularly the proposed refunding bonds.

For the reason stated, the judgment is reversed.

Whole Court sitting, except Judge Perry.