## Mitchell v. City of Glasgow.

Dec. 2, 1941.

Wm. H. Crutcher, Jr., for appellant.
Philip H. Wilson for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

On January 7, 1941, the Board of Common Council of Glasgow, Kentucky, a city of the fifth class, enacted an ordinance providing for the issuance and sale of $26,000 City of Glasgow 3% funding bonds, the proceeds of which when sold to be used to pay and discharge a like amount of outstanding floating indebtedness of the City of Glasgow. The maturity dates of the bonds are from February 1, 1942, to February 1, 1953, inclusive.

In September, 1941, the City of Glasgow brought

this action in the Barren circuit court pursuant to the provisions of Sections 186c-6 and 186c-7, Kentucky Statutes, 1936 Edition, seeking the approval of the court to issue and sell funding bonds proposed in the ordinance, and also under the provisions of the Declaratory Judgment Act, Section 639a—1 et seq., Civil Code of Practice. The city, as plaintiff below, named as party defendant J. H. Mitchell, a citizen and taxpayer of the City of Glasgow, alleging that defendant and all the citizens and taxpayers of the city were interested and affected by the subject matter of the action, and that the action was brought against the defendant in his own right as such citizen and taxpayer and as representative of and for and on behalf of all other citizens and taxpayers of the city, and for all other persons similarly situated who are interested in or affected by the matters involved.

The petition alleges, in substance, that the floating indebtedness of the city to be paid by the proceeds of the funding bonds proposed to be issued and sold, was a valid indebtedness and created for governmental purposes, and that each item of indebtedness represented by city warrants was for governmental functions of the city, and the city could not have carried on its necessary and essential functions without the issuance of said warrants or creation of said indebtedness, which had accumulated over a period of years from 1929 to 1938, with exception of a year or two within that interval of time, and that the officials of the city in office at the time of the creation of such indebtedness had due regard for the finances of the city; that at the time of the issuance of the warrants or items of indebtedness included in the total sum of the indebtedness, each was issued within the constitutional and statutory limitations applicable to cities of the fifth class and were valid when issued. Briefly stated, the petition contains all necessary allegations provided in the Statutes, supra, necessary to show the right of the city to issue said funding bonds.

It appears, however, that after the passage of the ordinance for the issuance of sale of $26,000 funding bonds and before the institution of the suit, the city managed to pay or make arrangements for the payment of about $4,000 of the city's indebtedness and the suit asked that the city be permitted to issue only $22,000 funding bonds. The appellant, defendant below, filed

his demurrer to the petition which was overruled. The city introduced as witnesses to prove its case the City Clerk and City Treasurer.

Without entering into a detailed resumé of the evidence, it suffices to say that it is shown by the evidence of the witnesses who testified as to each item of indebtedness, that all of said warrants were issued for governmental purposes. The witnesses testified to each warrant or item of indebtedness, a list of which is filed with the record, showing the amount thereof, the date of issuance, to whom issued, and the purpose of the same. Also, the evidence of the City Clerk, who was the custodian of the city records, shows the assessed valuation of the property of the city during each year over the period from 1929 to 1938 when the indebtedness was created, and it is made to appear that at no time did the city's expenditures in any year exceed the amount of income produced by the levy actually made, or by the maximum levy which might have been made, which was 75c on each $100 of assessed property.

It is to be observed, however, that the indebtedness sought to be funded was incurred prior to the effective date of the opinion in Payne v. City of Covington, 276 Ky. 380, 123 S. W. (2d) 1045, 122 A. L. R. 321, and hence the indebtedness was valid so long as the expenditures of the city did not exceed in any one year the amount of revenue which might have been produced had the city made the maximum levy.

It is also shown in the evidence that the assessed valuation of the property of the city for the year 1939 is $2,765,961, and that the assessment for 1940 will be approximately $75,000 more than the 1939 assessment. It is shown that the total sum of the present outstanding indebtedness of the city is $35,045 and adding to that sum the $22,000 funding bonds proposed to be issued, the aggregate sum of all indebtedness would be $57,045. It appears from mathematical calculation, based upon the 1939 assessment, the total amount of indebtedness including the proposed funding bonds would be approximately 2.06% of the assessed valuation of property for that year.

Upon the pleadings, exhibits and evidence, the chancellor found and adjudged that the indebtedness of the City of Glasgow sought to be funded was a valid out-

standing debt and obligation of the city and further, that the city had the right to issue $22,000 funding bonds proposed in the ordinance and that when issued and sold same would be valid obligations of the city and that the proceeds thereof be applied in payment of a like amount of indebtedness of the city.

Our examination of the record convinces us that the procedure taken by the city is strictly in accordance with the constitutional and statutory provisions relating to the subject and is sustained by the evidence.

Wherefore, the judgment is affirmed.