### Meyers, City Director of Finance, v. City of Louisville.

May 20, 1949.

James W. Stites for appellant.

Gilbert Burnett and Alex P. Humphrey for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

William D. Meyers, Director of Finance of the City of Louisville, instituted this action, pursuant to the provisions of KRS 83.160, against the City of Louisville seeking a declaration of rights, particularly as to whether or not the City may validly borrow against revenues appropriated but not to be received until after the close of the current fiscal year.

The specific question is whether or not the City can anticipate during the current fiscal year income or revenue which it is to receive from the "1% Occupation License Tax" which is collected dur'ng the months of April, May and June but not to be received by the City until after the close of the current fiscal year.

The Board of Aldermen of the City of Louisville properly appropriated the sum of $10,591,054 for the current fiscal year, but up to March 31, 1949, the actual expenditures totalled $7,280,372.55, leaving a balance of $3,310,681.45 appropriated but not expended for the remainder of the year. With the balance of cash on hand and estimated collections between Apr'l 1st and June 30th, aside from the Occupation License Tax, there will yet remain a shortage of $842,000 of monies actually to be received in the City Treasury. Based upon the experience of the entire fiscal year, the Occupation License Tax to be collected during the last three months will be approx'mately One Million Dollars, or more than sufficient to overcome the excess of $842,000.

The fiscal year of the Sinking Fund coincides with the calendar year, and under the provisions of KRS 91.200, the requirements of the Sink'ng Fund must be

met before any sum is paid over into the General Fund of the City. This creates a situation wherein the City will receive no income from the Occupation License Tax for the first quarter of 1949, which is the third quarter of the City's fiscal year. This Occupation License Tax collected during the fourth quarter, under a withholding system by the employers, will not be paid into the City until after the three months' period is completed. Thus it is noted that the tax, although provided for and collected, will not actually be received by the City until after the close of the City's fiscal year. In order to carry on and exercise its governmental functions the City is forced to meet this situation by borrowing money in anticipation of this collected Occupation License Tax, or else drastically curtail essential expenditures during the remainder of the fiscal year.

Upon hearing below, the court adjudged in substance that the proposed loan is valid even though same is partially secured by revenues anticipated but not actually to be received during the fiscal year; that the revenues to be received from the Sinking Fund under the Occupation License Tax already appropriated for the fiscal year are "income and revenue provided for such year"; and that the plaintiff can properly audit and approve the loan to the City borrowed against revenues anticipated prior to the close of the fiscal year and especially against revenues anticipated from the collection of the Occupation License Tax for the last three months of the fiscal year, but not to be actually received until after the close of the fiscal year. Plaintiff below prosecutes this appeal.

We direct our attention to the questions, first, as to whether or not such a loan would be in violation of the constitutional inhibition of spending beyond income and revenues provided for the current year, and second, would it be a violation of the statutory ban of borrowing over the limits of the levy for a year?

Section 157 of the Constitution provides in part:

"No county, city, town, taxing district or other municipality, shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided

for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void."

Under the above section the City is definitely forbidden to become indebted in any manner or for any purpose in an amount exceeding any year the income and revenue provided for such year without the assent of two-thirds of the voters thereof. We have consistently recognized the rigidity of this rule. The question here: Has the income and revenue been provided? The answer is obvious. The mere fact that those who in reality are agents of the City are not to pay into the City collected tax until after the end of the current fiscal year by no means operates to destroy the fact that the income and revenue had been provided. In fact, it would not have, nor could have been collected had it not properly been provided for and a system for collection set up.

In Payne v. City of Covington, 276 Ky. 380, 123 S. W. 2d 1045, 1047, 122 A. L. R. 321, the court said:

"The undoubted purpose of the makers of the Constitution and of the people in adopting the inserted language, supra, of section 157 and its limiting language found in section 158 was to require counties, municipal corporations and other tax levying political units to conduct their affairs on the 'pay-as-you-go' plan, as is not only clearly evidenced by the language itself, but which has also been interpreted by all courts before which questions arising thereunder have been presented, * * *"

This very definitely fixed policy of "pay-as-you-go" means that obligations cannot be created to be paid out of revenues to be collected after the termination of the fiscal year, or, in other words, that the debt must run concurrently with the current revenues else there will be a contravention of the limit provision. See also 38 Am. Jur., Municipal Corporations, Sec. 445.

The question then becomes: Is this an obligation to be paid out of revenues to be collected after the close of the fiscal year? Actually when this tax is withheld by the employers from the salary or wages of their employees the employers become the tax collectors for the

City, and the money so withheld is constructively received and held by the City.

There is ample Federal authority for this view. In Mertens Law of Federal Income Taxation, Vol. 2, Section 10.07, it is said:

"The general rule is that receipt of income by an agent is equivalent to receipt by the principal and such income is constructively received by him."

This view was upheld in the case of Maryland Casualty Company v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297.

Following this rule it becomes apparent that the collections by the employers for the fourth quarter are constructively received by the City immediately upon being withheld by the employer. The collection of the tax presupposes the correlative duty to hold same for and to pay it to the City.

Thus, the "pay-as-you-go" theory for all practical purposes then relates to the priority of appropriation and provision for the revenue. In the instant case the revenue has been provided for and is being systematically collected and held in the hands of the collecting agency.

We conclude, therefore, there is no violation of the inhibitions imposed by Section 157 of the Constitution. KRS 91.290(3) provides in part:

"Any city of the first class may borrow, during any fiscal year, within the limits of the levies and appropriations for that year as prescribed by law, such funds as are needed for the conduct of the business of the city or any of its departments in that year, pending the full collection of the revenue of the city for that year applicable for the purpose."

Attention is directed to the words "within the limits of the levies and appropriations." Clearly this borrowing is within such limits. We, consequently, conclude that the court properly adjudicated the matter.

The judgment is affirmed.